**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

JANE DOE,

$\qquad\qquad\qquad$ Plaintiff,

$\qquad$ v.

THE TRUSTEES OF COLUMBIA
UNIVERSITY IN THE CITY OF NEW YORK
AND TOM HARFORD,

$\qquad\qquad\qquad$ Defendants.

No. 1:18-cv-07831 (PAC)

Oral Argument Requested

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT**
**THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF**
**NEW YORK'S MOTION TO DISMISS THE AMENDED COMPLAINT AND TO**
**STRIKE THE *AD DAMNUM* CLAUSE OF THE AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ...................................................................................... 3

ARGUMENT ........................................................................................................ 5

I.    PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER TITLE IX .............. 6

    A.    *Quid Pro Quo* Sexual Harassment/Hostile Educational Environment
        (Counts VI & VII)....................................................................................... 6

        1.    Columbia's Lack of Knowledge .................................................. 8

        2.    Columbia's Actions Were Not Clearly Unreasonable .............................. 13

    B.    Title IX Claim Based on Retaliation (Count VIII) ................................. 14

    C.    Gender Discrimination in Terms and Conditions of Education (Count V) .......... 16

II.   PLAINTIFF'S NON-FEDERAL CLAIMS SHOULD BE DISMISSED ....................... 21

    A.    Supplemental Jurisdiction ...................................................................... 21

    B.    NYCHRL (Counts I, II, III & IV)............................................................ 22

        1.    Counts I, II, and III ................................................................ 22

        2.    Count IV................................................................................. 24

    C.    Negligent Supervision/Retention (Count IX) ....................................... 25

III.  PLAINTIFF'S $60 MILLION *AD DAMNUM* CLAUSE SHOULD BE
      STRICKEN ........................................................................................................ 26

CONCLUSION........................................................................................................ 29

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ashcroft* v. *Iqbal*,
   556 U.S. 662 (2009).......................................................................................... passim

*Bailey* v. *N.Y. Law Sch.*,
   No. 16-cv-4283, 2017 WL 835190 (S.D.N.Y. Mar. 1, 2017)....................................14

*Baity* v. *Kralik*,
   51 F. Supp. 3d 414 (S.D.N.Y. 2014)........................................................................17

*Bell Atl. Corp.* v. *Twombly*,
   550 U.S. 544 (2007).......................................................................................... passim

*Benacquista* v. *Spratt*,
   217 F. Supp. 3d 588 (N.D.N.Y. 2016).......................................................................27

*C.T.* v. *Liberal Sch. Dist.*,
   562 F. Supp. 2d 1324 (D. Kan. 2008)..................................................................18, 19

*Carabello* v. *N.Y.C. Dep't of Educ.*,
   928 F. Supp. 2d 627 (E.D.N.Y. 2013) .................................................................13, 14

*Caravantes* v. *53rd St. Partners, LLC*,
   No. 09-cv-7821, 2012 WL 3631276 (S.D.N.Y. Aug. 23, 2012)................................27

*Carnegie-Mellon Univ.* v. *Cohill*,
   484 U.S. 343 (1988)...................................................................................................21

*Chauca* v. *Abraham*,
   89 N.E.3d 475 (N.Y. 2017).......................................................................................27

*Cohen* v. *Postal Holdings, LLC*,
   873 F.3d 394 (2d Cir. 2017).......................................................................................21

*Collins* v. *Fischer*,
   No. 15-cv-103, 2018 WL 1626528 (S.D.N.Y. Mar. 30, 2018)...................................13

*Comm'n on Human Rights* v. *ISS Action Sec.*,
   OATH 674/ 11, Rep. & Rec., 2011 WL 12521359, at *5 (Apr. 12, 2011),
   *adopted*, Dec. & Ord. (June 26, 2011).....................................................................23

*Croft* v. *AXA Equitable Life Ins. Co.*,
   No. 17-CV-9355, 2018 WL 4007646 (S.D.N.Y. Aug. 22, 2018).................................5

*Davis* v. *Monroe County Bd. of Educ.*,
  526 U.S. 629 (1999)..................................................................................2, 7, 13

*DeCecco* v. *Univ. of S.C.*,
  918 F. Supp. 2d 471 (D.S.C. 2013)..................................................................10

*Doe 1* v. *Baylor Univ.*,
  240 F. Supp.3d 646 (W.D. Tex. 2017).............................................................20

*Doe* v. *Alsaud*,
  12 F. Supp. 3d 674 (S.D.N.Y. 2014)................................................................25

*Doe* v. *Bibb Cty. Sch. Dist.*,
  688 F. App'x 791 (11th Cir. 2017) ..................................................................21

*Doe* v. *Columbia Univ.*,
  101 F. Supp. 3d 356 (S.D.N.Y. 2015) (emphasis removed),
  *vacated and remanded on other grounds*, 831 F.3d 46 (2d Cir. 2016)...................16

*Doe* v. *E. Irondequoit Cent. Sch. Dist.*,
  No. 16-cv-6594, 2018 WL 2100605 (W.D.N.Y. May 7, 2018).......................19, 20

*Doe* v. *Flaherty*,
  623 F.3d 577 (8th Cir. 2010) ...........................................................................12

*Ehrens* v. *Lutheran Church*,
  385 F.3d 232 (2d Cir. 2004)..............................................................................25

*Escue* v. *N. Okla. Coll.*,
  450 F.3d 1146 (10th Cir. 2006) ..................................................................13, 20

*France* v. *Touro Coll.*,
  No. 14-cv-4613, 2016 WL 1105400 (E.D.N.Y. Feb. 16, 2016),
  *report and recommendation adopted sub nom. Ueth France* v. *Touro Coll.*,
  No. 14-cv-4613, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016)............................16

*Gaughan* v. *Rubenstein*,
  261 F. Supp. 3d 390 (S.D.N.Y. 2017)................................................................24

*Gebser* v. *Lago Vista Indep. Sch. Dist.*,
  524 U.S. 274 (1998)................................................................................. passim

*Ginsburg* v. *City of Ithaca*,
  839 F. Supp. 2d 537 (N.D.N.Y. 2012)...............................................................25

*Gonzalez* v. *Esparza*,
  No. 02-cv-4175, 2003 WL 21834970 (S.D.N.Y. Aug. 6, 2003)..............................8

*H.S.* v. *Stroudsburg Area School District & Brandon W. Flatley,*
  No. 3:17CV1839, 2018 WL 4565557 (M.D. Pa. Sept. 24, 2018)...........................................11

*Hayut* v. *State Univ. of New York,*
  352 F.3d 733 (2d Cir. 2003)....................................................................................13, 14

*Herskovitz* v. *Equinox Holdings, Inc.,*
  2013 N.Y. Misc. LEXIS 2371, 2013 NY Slip Op 31193(U)
  (Sup. Ct. N.Y. Cty. June 3, 2013)...........................................................................26

*Hopper* v. *Banana Republic, LLC,*
  No. 07 CIV. 8526 (WHP), 2008 WL 490613 (S.D.N.Y. Feb. 25, 2008) .........................25, 26

*Karasek* v. *Regents of Univ. of California,*
  226 F. Supp. 3d 1009 (N.D. Cal. 2016) ...................................................................14

*Lumbard* v. *Maglia, Inc.,*
  621 F. Supp. 1529 (S.D.N.Y. 1985).........................................................................26

*MacMillan* v. *Millennium Broadway Hotel,*
  873 F. Supp. 2d 546 (S.D.N.Y. 2012).....................................................................27

*Martin* v. *J.C. Penney Corp.,*
  28 F. Supp. 3d 153 (E.D.N.Y. 2014) .......................................................................23

*Mayo-Coleman* v. *American Sugar Holdings, Inc.,*
  No. 14-cv-0079, 2018 WL 2684100 (S.D.N.Y. June 6, 2018) .........................................28, 29

*McDonnell Douglas Corp.* v. *Green,*
  411 U.S. 792 (1973)..............................................................................................7

*Mercer* v. *Duke Univ.,*
  50 F. App'x 643 (4th Cir. 2002) ..............................................................................27

*Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.,*
  715 F.3d 102 (2d Cir. 2013).....................................................................................23

*Novio* v. *New York Acad. of Art,*
  286 F. Supp. 3d 566 (S.D.N.Y. 2017)......................................................................24

*Nungesser* v. *Columbia Univ.,*
  244 F. Supp. 3d 345 (S.D.N.Y. 2017), *appeal withdrawn,* No. 17-900, 2017
  WL 4404575 (2d Cir. July 10, 2017).........................................................................16

*Oram* v. *SoulCycle LLC,*
  979 F. Supp. 2d 498 (S.D.N.Y. 2013).......................................................................29

*P.H.* v. *Sch. Dist. of Kansas City, Missouri*,
    265 F.3d 653 (8th Cir. 2001) ...................................................................9, 11

*Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*,
    633 F.3d 81 (2d Cir. 2011)..................................................................................7

*Pungitore* v. *Barbera*,
    506 F. App'x 40 (2d Cir. 2012) ........................................................................17

*RF* v. *S. Country Cent. Sch. Dist.*,
    No. 13-cv-2710, 2016 WL 5349782 (E.D.N.Y. Sept. 23, 2016), *appeal
    dismissed* (Dec. 7, 2016)....................................................................................11

*Romero* v. *City of New York*,
    839 F. Supp. 2d 588 (E.D.N.Y. 2012) ..............................................................12

*Roskin-Frazee* v. *Columbia University*,
    No. 17-cv-2032, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018)...................8, 10, 19

*Shaw* v. *Equitable Life Assurance Society of U.S.*,
    No. 82 C 1421, 1982 WL 1460 (N.D. Ill. Oct. 29, 1982) ...............................27, 29

*Simpson* v. *University of Colorado Boulder*,
    500 F.3d 1170 (10th Cir. 2007) ....................................................................17, 18

*Solow* v. *Citigroup, Inc.*,
    827 F. Supp. 2d 280 (S.D.N.Y. 2011).................................................................5

*State Farm Mut. Auto. Ins. Co.* v. *Campbell*,
    538 U.S. 408 (2003)...........................................................................................28

*Tolbert* v. *Queens Coll.*,
    242 F.3d 58 (2d Cir. 2001)................................................................................17

*Tsereteli* v. *Residential Asset Securitization Trust*,
    697 F. Supp. 2d 546 (S.D.N.Y. 2010).................................................................5

*Tubbs* v. *Stony Brook Univ.*,
    343 F. Supp. 3d 292 (S.D.N.Y. 2018)...................................................2, 7, 14, 21

*Tubbs* v. *Stony Brook Univ.*,
    No. 15-cv-0517, 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016)...........14, 18, 19, 20

*Williams* v. *Calderoni*,
    No. 11-cv-3020, 2012 WL 691832 (S.D.N.Y. Mar. 1, 2012), *aff'd sub nom.
    Williams* v. *Schwartz*, 529 F. App'x 89 (2d Cir. 2013) ..................................10, 11

*Williams* v. *N.Y.C. Hous. Auth.*,
   61 A.D.3d 62 (1st Dep't 2009) .........................................................................................23

*Wyeth* v. *King Pharm., Inc.*,
   396 F. Supp. 2d 280 (E.D.N.Y. 2005) ...............................................................................26

*Yu v. Vassar Coll.*,
   97 F. Supp. 3d 448 (S.D.N.Y. 2015) ..................................................................................17

*Zamora* v. *N. Salem Cent. Sch. Dist.*,
   414 F. Supp. 2d 418 (S.D.N.Y. 2006) ................................................................................19

*Zeno* v. *Pine Plains Cent. Sch. Dist.*,
   702 F.3d 655 (2d Cir. 2012) ........................................................................................8, 11

## STATUTES

20 U.S.C. §§ 1681–88 .............................................................................................................6

28 U.S.C. § 1367 ...................................................................................................................21

42 U.S.C. § 2000e-2 ..............................................................................................................16

N.Y. Admin. Code § 8-107(1) ...............................................................................................23

N.Y. Admin. Code § 8-107(4) ...............................................................................................22

## OTHER AUTHORITIES

Brian A. Pappas, *Out from the Shadows: Title IX, University Ombuds, and the
   Reporting of Campus Sexual Misconduct*, 94 DENVER L. REV. 71, 107 (2016) .......................9

Karen Xia, *GS Dean of Students removed from position for 'unacceptable'
   conduct*, COLUMBIA SPECTATOR, Aug. 21, 2018,
   https://www.columbiaspectator.com/news/2018/08/21/gs-dean-of-students-
   removed-from-position-for-unacceptable-conduct/ ...............................................................5

Fed. R. Civ. P. 12(b) ................................................................................................................5

Fed. R. Civ. P. 12(f) ..............................................................................................................26

Lucas A. Ferrara, LANDLORD AND TENANT PRACTICE IN NEW YORK (2019),
   § 16:379 ................................................................................................................................15

Defendant The Trustees of Columbia University in the City of New York ("Columbia" or "the University") respectfully submits this memorandum of law in support of its motion to dismiss the Amended Complaint filed by Plaintiff Irene Politis (the "Amended Complaint").

## PRELIMINARY STATEMENT

Plaintiff alleges that, some weeks after she first enrolled at the University for summer classes in May 2018, she became involved in an inappropriate relationship with Defendant Thomas Harford ("Harford"), who was then the Dean of Students at Columbia's School of General Studies ("GS").[1]  Immediately upon learning of this improper relationship in early August, Columbia relieved Harford of all responsibilities and barred him from campus.  Within a week, the University terminated Harford, and announced that his termination was the result of his unacceptable conduct.  Despite Columbia's swift and comprehensive response, Plaintiff seeks to hold the University responsible for gender discrimination under Title IX as a result of Harford's conduct.  But, as discussed below, Title IX does not hold an educational institution strictly liable for improper conduct by an employee about which it was unaware, especially where, as here, the University took prompt remedial action as soon as it learned of it.

More specifically, under applicable federal law, a plaintiff may recover damages under Title IX only if a school engages in intentional discrimination.  In other words, schools are not liable every time sexual harassment occurs on their campuses or in their programs.  Rather, in crafting the standards for Title IX liability on the part of an educational institution, the courts have

---

[1]     GS is a liberal arts college dedicated specifically to students with nontraditional backgrounds seeking a traditional education.  GS does not accept students directly from high school.  GS is designed for students who did not attend college straight after high school, who have taken a break of a year or more from their education, or who are only able to attend part time.  For the 2017–18 academic year, GS enrolled more than 2,100 students, with an average age of 26, and 22% of whom were enrolled part-time.  *See* https://gs.columbia.edu/program-overview.

been both practical and realistic.  A university cannot possibly prevent or know about every instance of gender-based misconduct by every one of its students or employees.  As a result, a plaintiff seeking to hold an educational institution liable under Title IX must show that a school official with authority to address the alleged discrimination actually knew about the ongoing harassment and was "deliberately indifferent" to it, meaning that the official responded to the harassment in a manner that was "clearly unreasonable in light of the known circumstances." *Davis* v. *Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Plaintiff has not and cannot possibly allege that she has satisfied this "high bar for plaintiffs" here.  *Tubbs* v. *Stony Brook Univ.*, 343 F. Supp. 3d 292, 309 (S.D.N.Y. 2018). Although she makes conclusory assertions as to Columbia's purported "knowledge" of her relationship with Harford, Plaintiff does not identify a single University official who had such knowledge, much less allege any plausible facts as to how that person gained such knowledge. Nor does Plaintiff allege any facts suggesting that Columbia was deliberately indifferent to the alleged sexual relationship with Harford once it learned of it.  To the contrary, as noted above, immediately upon learning of their relationship, Columbia removed Harford from campus and then terminated him, facts that Plaintiff effectively concedes in her Amended Complaint.  Plaintiff has similarly not offered any plausible explanation of how Columbia retaliated against her in response to her complaint.

Plaintiff's remaining non-federal claims fare no better.  Her New York City Human Rights Law claims are deficient because she fails to allege that she was deprived of the equal enjoyment of any accommodations, advantages, services, facilities, or privileges of a Columbia education or otherwise was treated less well by the University because of her gender.  Plaintiff's

common law negligent supervision/retention claim also fails because New York law, like Title IX, provides that an employer is liable only if it is aware of specific similar prior acts of misconduct.

For these reasons, as discussed further below, Plaintiff's Amended Complaint against Columbia should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff is a 25-year-old woman who enrolled in classes at Columbia during the summer of 2018, even though she had been admitted at GS and was originally slated to enroll in the fall of 2018. (Am. Compl., Dkt. 26, ¶¶ 18, 72.) In May 2018, however, while not yet a student, Plaintiff reached out to Columbia's Sexual Violence Response & the Rape Crisis/Anti-Violence Support Center ("SVR") after she was sexually assaulted while staying at an acquaintance's apartment in New York City. (*Id.* ¶¶ 24, 25.) Despite the fact that she was not yet enrolled, SVR "[r]ecogniz[ed] her need for emergency housing" and directed Plaintiff to meet with Defendant Harford, who was then the Dean of Students at GS. (*Id.* ¶ 25.) Harford confirmed that he would help Plaintiff secure University housing and immediately arranged for Plaintiff to meet with a therapist at Columbia's Counseling and Psychological Services to provide her with "emotional and psychological support." (*Id.* ¶¶ 26, 29.) Plaintiff alleges that Harford asked her to come back the following morning to meet with him, at which point he asked about her financial situation. (*Id.* ¶ 27.) Upon learning that Plaintiff had "no money," Harford gave her $500 in cash. (*Id.*) He also told Plaintiff that he would help her figure out a "creative scholarship plan" to finance her studies, since she "desperately needed scholarship money" in order to attend Columbia. (*Id.* ¶ 28.)

Plaintiff alleges that sometime thereafter, Harford "began to pursue an inappropriate and manipulative relationship" with her. (*Id.* ¶ 31.) She states that she and Harford began "exchanging flirtatious text messages and frequently speaking on the phone and over video chat." (*Id.*) Plaintiff alleges that in response to Harford's "coercive advances," which she does

3

not describe, she engaged in a "sexual and romantic relationship" with him (*id.* ¶ 34), which involved Harford "intimately and sexually touching her body" (*id.* ¶ 17). Their relationship also involved highly-sexualized, "DD/LG" communications between Plaintiff and Harford.[2] (*Id.* ¶¶ 37, 42, 47.)  On one occasion, she says, they engaged in "inappropriate sexual acts" at Plaintiff's Columbia apartment.  (*Id.* ¶ 43.)  She also alleges that they engaged in "sexual acts" in Harford's office and, upon information and belief, that unidentified "administrators in neighboring offices overheard these incidents."  (*Id.* ¶ 45.)  Plaintiff does not otherwise describe these "sexual acts" other than to note that on one occasion, Harford "kissed Plaintiff in the stairwell."  (*Id.*)

Plaintiff further alleges that when she told Harford "how the relationship was affecting her" and expressed her "discomfort" with it, he assured Plaintiff they could "make [the relationship] work."  (*Id.* ¶ 49 (bracketed text in the original).)  He allegedly suggested that Plaintiff "transfer to a different school."  (*Id.*)

Notably, although Plaintiff alleges that others at Columbia had "actual knowledge of Dean Harford's harassment of Plaintiff" while it was occurring (*id.* ¶ 52), she supplies no plausible facts to support this conclusion.  To the contrary, her allegations establish only that certain administrators were aware that Harford was working closely with Plaintiff—something that might be expected given Plaintiff's concededly acute and urgent need for housing, financial, and medical services.  Nowhere does Plaintiff allege that she reported the nature of her relationship with Harford to anyone at the University during this period, nor does she set forth facts demonstrating that the University had actual knowledge of their highly inappropriate relationship. While Plaintiff also alleges that Columbia failed to respond "adequate[ly]" when it actually learned about "the harassment that Plaintiff suffered" (*id.* ¶ 68), again, she alleges no facts concerning

---

[2]   "DD/LG," which stands for "Daddy Dom/Little Girl," is a type of fetish in which the parties engage in roleplay involving a dominant "daddy" and a submissive "little girl."  *See* https://www.dictionary.com/e/acronyms/ddlg/.

Columbia's response, instead referring only in vague terms to "Columbia's actions and inaction," (*id.* ¶ 69). Plaintiff acknowledges that she did not file a complaint against Harford with the University's Office of Equal Opportunity and Affirmative Action until August 15, 2018, shortly before filing this lawsuit. (*Id*. ¶ 70.) In fact, as Plaintiff well knows, as soon as the University learned about Harford's alleged sexual harassment at that time, it took immediate action to remove Harford from campus and terminated him just a few days later. In this regard, Plaintiff concedes that, as of August 28, 2018, the date the original Complaint was filed, Harford was no longer serving as Dean of Students at GS. (*Id.* ¶ 20.)[3]

## ARGUMENT

On a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court "must accept the factual allegations set forth in the complaint as true and draw all reasonable inferences in favor of the plaintiff." *Croft* v. *AXA Equitable Life Ins. Co.*, No. 17-cv-9355, 2018 WL 4007646, at \*2 (S.D.N.Y. Aug. 22, 2018). Legal conclusions and "hypothetical speculation," *Solow* v. *Citigroup, Inc.*, 827 F. Supp. 2d 280, 289 (S.D.N.Y. 2011) (quoting *Tsereteli* v. *Residential Asset Securitization Trust*, 697 F. Supp. 2d 546, 548 n.9 (S.D.N.Y. 2010)), however, "are not entitled to the assumption of truth," *Ashcroft* v. *Iqbal*, 556 U.S. 662, 679 (2009). Similarly, "naked assertion[s] devoid of further factual enhancement" will not survive a motion to dismiss. *Id*. at 678 (citation and internal quotation marks omitted). When a plaintiff has failed to plead sufficient facts "to state a claim to relief that is plausible on its face," the claim "must be

---

[3]    Plaintiff was clearly aware at the time that she filed her original Complaint on August 28, 2018, that Columbia had already terminated Harford for unacceptable conduct, noting in her original Complaint and her Amended Complaint that Harford "formerly served as the Dean of Students of Columbia's GS School." (Compl. ¶ 18; *see also* Am. Compl. ¶ 20.) Moreover, on August 21, 2018, Plaintiff received an email sent to the entire GS community by the school's Dean, in which the Dean wrote that she "ha[d] removed Tom Harford from his position as Dean of Students after conduct that is unacceptable in light of his responsibilities was brought to our attention." *See* Karen Xia, *GS Dean of Students removed from position for 'unacceptable' conduct*, COLUMBIA SPECTATOR, Aug. 21, 2018, https://www.columbiaspectator.com/news/2018/08/21/gs-dean-of-students-removed-from-position-for-unacceptable-conduct/ (quoting email).

dismissed." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007).  This means that the allegations must support "more than a sheer possibility that a defendant has acted unlawfully," and cannot be "merely consistent with a defendant's liability."  *Iqbal*, 556 U.S. at 678 (citation and internal quotation marks omitted).

## I.      PLAINTIFF FAILS TO STATE A CLAIM FOR RELIEF UNDER TITLE IX

Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–88, provides in pertinent part that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance."  20 U.S.C. § 1681(a) (2012).  Here, Plaintiff asserts four causes of action against Columbia under Title IX:  *Quid Pro Quo* Sexual Harassment (Count VI); Hostile Educational Environment (Count VII); Retaliation (Count VIII); and Gender Discrimination in Terms and Conditions of Education (Count V).  As set forth below, Plaintiff fails to allege sufficient facts to make out a plausible claim under any of these theories.

### A.      *Quid Pro Quo* Sexual Harassment/Hostile Educational Environment (Counts VI & VII)

Plaintiff's Title IX claims against the University in Counts VI and VII are premised on Harford's alleged sexual harassment of Plaintiff.  In *Gebser* v. *Lago Vista Independent School District*, the United States Supreme Court explained that while a school can be liable for teacher-student sexual harassment under Title IX, such liability is strictly limited to cases in which there is "an official decision by the [school] not to remedy the violation."  524 U.S. 274, 290 (1998).  Thus, when a plaintiff alleges discriminatory harassment by a professor, a university can be liable for the alleged harassment only when a university "official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the [university's] behalf" has "actual knowledge" of the harassment and "fails adequately to respond."  *Id*.

Stated differently, to comply with Title IX, a school must respond to known acts of discriminatory harassment in a manner that is not "'clearly unreasonable' in light of known circumstances." *Papelino* v. *Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (quoting *Davis*, 526 U.S. at 648). The Supreme Court has emphasized that the adverb "clearly" has real meaning here—it "is not a mere 'reasonableness' standard." *Davis*, 526 U.S. at 649. Indeed, the Supreme Court observed that the deliberate indifference framework guards against the "risk that [a school] would be liable in damages not for its own official decision but instead for its employees' independent actions." *Gesber*, 524 U.S. at 290–91; *see also Tubbs* v. *Stony Brook Univ.*, 343 F. Supp. 3d 292, 309 (S.D.N.Y. 2018) (*Davis* "set a high bar for plaintiffs to recover under Title IX.").

Thus, unlike under Title VII, defendants in Title IX cases should not be automatically put to the burden and expense of discovery since, as Justice O'Connor explained, "there is no reason why," on an appropriate motion to dismiss, a court "could not identify a response as not 'clearly unreasonable' as a matter of law." *Davis*, 526 U.S. at 649. *Cf. McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802 (1973) (Title VII requires only that plaintiff plead a "prima facie case of racial discrimination" sufficient to shift the burden onto employer to "articulate some legitimate, nondiscriminatory reason" for adverse employment action).

The requirement that a plaintiff plead with plausibility that a school had actual knowledge of discriminatory harassment and responded to it with deliberate indifference applies with equal force to *quid pro quo* and hostile environment sexual harassment claims. *See Papelino*, 633 F.3d at 88–89. Accordingly, in order to state a claim under either theory, Plaintiff must plausibly allege that (1) a Columbia official with "authority to address the alleged discrimination and to institute corrective measures," (2) had "actual knowledge" of Harford's alleged sexual

harassment with respect to Plaintiff, and (3) that the University's response was "clearly unreasonable." *Id.* (citations and internal quotation marks omitted). As set forth below, because Plaintiff has failed to do any of the above, Counts VI and VII should be dismissed.

### 1.    Columbia's Lack of Knowledge

In analyzing a "deliberate indifference" claim, courts have insisted that a university must have "actual knowledge" of the harassment, *Gebser*, 524 U.S. at 290, noting that constructive knowledge is insufficient. *Id.* at 289. *See also Zeno* v. *Pine Plains Cent. Sch. Dist.*, 702 F.3d 655, 666 (2d Cir. 2012) (constructive knowledge "is not enough; only actual knowledge is a predicate to liability" under Title IX); *Roskin-Frazee* v. *Columbia Univ.*, No. 17-cv-2032, 2018 WL 6523721, at *4 (S.D.N.Y. Nov. 26, 2018) ("[A] university cannot be held liable pursuant to Title IX without actual knowledge or notice of the harassment. Constructive knowledge . . . is not enough."). Nor is actual knowledge of harassment allegedly suffered by others enough—the University must actually know about the harassment experienced by the student bringing the claim. *See, e.g.*, *Gonzalez* v. *Esparza*, No. 02-cv-4175, 2003 WL 21834970, at *3 (S.D.N.Y. Aug. 6, 2003) (holding that "incidents of harassment by teachers against students at other schools" was insufficient to give school board actual knowledge of plaintiff's harassment by one teacher).

Here, the Complaint is devoid of non-conclusory allegations that anyone at Columbia had any knowledge of Harford's improper relationship with Plaintiff when it was happening. Indeed, Plaintiff does not allege that she (or anyone else) reported the alleged sexual harassment to anyone at the University prior to August 15, 2018.[4] Instead, she points to four

---

[4]    To the extent Plaintiff alleges that she "informed her therapist at Columbia's Counseling and Psychological Services that a romantic and sexual relationship had formed with Dean Harford" (Am. Compl. ¶ 65), she does not provide any basis for the Court to conclude that the therapist was permitted, much less required, to report that confidential privileged conversation to anyone else at Columbia given the professional ethical guidelines and University policy that govern therapists. *See Gebser*, 524 U.S. at 290 (person with actual knowledge must also have "authority to address the alleged discrimination and to institute corrective measures"); Brian A. Pappas, *Out*

instances which, even if viewed in the most generous light to Plaintiff, merely suggest that one or two individuals may have had the opportunity to speculate whether the advisor-student interactions between Plaintiff and Harford departed from the norm in certain respects.  None of those instances demonstrate that the University was put on actual notice that Plaintiff and Harford were engaged in a highly inappropriate relationship, as is required to state a claim under Title IX here.  *See Iqbal*, 556 U.S. at 678 ("Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" (quoting *Twombly*, 550 U.S. at 557)).

More specifically, Plaintiff states that Harford "engaged in sexual acts with Plaintiff while in his office."  (Am. Compl. ¶ 45.)  Although Plaintiff then postulates that "administrators in neighboring offices overheard these incidents" (*id.*), she alleges no facts to substantiate this belief.  Indeed, even assuming she is correct that someone in a neighboring office could have overheard sexual acts taking place in Harford's office, Plaintiff fails to allege that there were in fact administrators present in neighboring offices at the time, that they heard any sounds from Harford's office, or that any of those individuals knew or should have known that any sounds that they might have heard were the result of inappropriate sexual conduct between Plaintiff and Harford.  Nor does Plaintiff even identify who those "administrators" were.  *See P.H.* v. *Sch. Dist. of Kansas City, Mo.*, 265 F.3d 653, 662 (8th Cir. 2001) (finding assertion that unidentified teacher walked in on student engaging in a sexual act with accused teacher did not "amount[] to actual notice of the wrongdoing," where student could not identify teacher, and they "acted quickly to cover up the sexual nature of the incident").  Without more, Plaintiff's conjecture about what

---

*from the Shadows: Title IX, University Ombuds, and the Reporting of Campus Sexual Misconduct*, 94 DENVER L. REV. 71, 107 (2016) (noting White House Task Force Report's recommendation that universities provide confidential resources to students, because "[m]andating that all employees report sexual misconduct leaves survivors with fewer places to turn").

unidentified Columbia employees might have overheard is inadequate "to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. *See also Williams* v. *Calderoni*, No. 11-cv-3020, 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012) ("[W]hile a plaintiff is entitled to plead on information and belief, [plaintiff] points to no 'information' that will render these statements any more than a speculative claim."), *aff'd sub nom. Williams* v. *Schwartz*, 529 F. App'x 89 (2d Cir. 2013).

Plaintiff also alleges that she "disclosed to [SVR] that Dean Harford had provided her with $500 in cash," and that "Plaintiff's SVR advocate expressed shock, informed Plaintiff that Dean Harford's behavior was extremely inappropriate, and vowed to raise this issue to her supervisor." (Am. Compl. ¶ 60.)[5] But even accepting these allegations as true, any argument that an administrator should have somehow intuited that Plaintiff was being—or was going to be—sexually harassed by Harford because Harford had given her $500 after learning she had no money falls far short of the stringent actual knowledge standard required to impose liability under Title IX, especially because Plaintiff concedes in the Amended Complaint that Harford "told her that he had given money to other students in the past."[6] (*Id.*) *See DeCecco* v. *Univ. of S.C.*, 918 F. Supp. 2d 471, 493 (D.S.C. 2013) (finding "vague comments suggest[ing] *possible* sexual discrimination or harassment" insufficient to satisfy actual knowledge requirement under

---

[5]   Like the therapist discussed in footnote 4 above, SVR advocates are neither permitted nor required to disclose reports of misconduct to Columbia.  As Judge Daniels noted in *Roskin-Frazee* v. *Columbia University*, No. 17-cv-2032, 2018 WL 6523721 (S.D.N.Y. Nov. 26, 2018), a report to an SVR representative "is insufficient for purposes of conferring actual notice on Defendant because Plaintiff merely reported her rape to an SVR representative, who Plaintiff does not allege had any authority to take corrective action to remedy her assault." *Id*. at *7 n.4.

[6]   Notably, Plaintiff fails to specify when her alleged disclosure to SVR happened (or when the Vice Dean allegedly gained this knowledge, *see* below n.7).  But Plaintiff alleges elsewhere in the Amended Complaint that Harford gave her the money during one of their very first meetings after she told him that "she had no money" (Am. Compl. ¶ 27), which means it would have occurred before their inappropriate relationship began.

Title IX).  Indeed, to the extent that anyone else at Columbia learned about Harford's alleged cash gift, they might not have considered it remarkable, considering Harford's prior generosity with other cash-strapped students.[7]

Similarly, although Plaintiff posits that Columbia was "aware of [Plaintiff] and Dean Harford's nearly constant contact" and that her "advisor at GS had asked Dean Harford why he was spending so much time with Plaintiff, and Dean Harford avoided the question," such allegations are also insufficient to establish actual knowledge for the purposes of Title IX liability. (Am. Compl. ¶¶ 62, 64.)  The mere fact that certain employees at Columbia were aware that the Dean of Students was in close contact with a high-needs student is simply not enough to rise to the level of actual knowledge of discriminatory harassment.  At best, these allegations amount to constructive knowledge, which "is not enough; only actual knowledge is a predicate to liability." *Zeno*, 702 F.3d at 666.  Indeed, the courts have refused to recognize similar factual patterns as sufficient to support a finding of "actual knowledge" for purposes of Title IX.  *See RF* v. *S. Country Cent. Sch. Dist.*, No. 13-cv-2710, 2016 WL 5349782, at *9 (E.D.N.Y. Sept. 23, 2016) (observing that "even if other teachers and/or administrators were aware that [a student] was spending a significant amount of time in [the alleged harasser's] classroom during or after school, this alone would be insufficient to put the District on notice of an improper student-teacher relationship under Title IX"), *appeal dismissed*, No. 16-3580 (2d Cir., Dec. 7, 2016); *P.H.*, 265 F.3d at 659 (student's familiar behavior with a teacher or even an "excessive amount of time" spent with a teacher "does not automatically give rise to a reasonable inference of sexual abuse"); *H.S.* v. *Stroudsburg Area Sch. Dist.*, No. 3:17-cv-1839, 2018 WL 4565557, at *3 (M.D. Pa.

---

[7]   While Plaintiff alleges, upon information and belief, that the Vice Dean "was aware that Dean Harford provided [Plaintiff] with cash" (*id.* ¶ 61), Plaintiff sets forth "no 'information' that w[ould] render [this] statement[] any more than a speculative claim," *Williams* v. *Calderoni*, 2012 WL 691832, at *7.

Sept. 24, 2018) (plaintiff failed to allege actual knowledge where, although "plaintiff allege[d] that teachers, supervisors, coaches and school security personnel knew that [plaintiff] was visiting [the alleged harasser] in his classroom, plaintiff [did] not allege that they were aware of the relationship between the two") (citation and internal quotation marks omitted).

Finally, while Plaintiff alleges that the Vice Dean "was also aware that Dean Harford was text messaging Plaintiff" (Am. Compl. ¶ 63), she does not identify which text messages were seen by the Vice Dean or whether he saw any highly sexualized or fetishistic text messages between Harford and Plaintiff (*see id*. ¶¶ 37, 42, 47).  Again, the courts have found similar allegations of inappropriate or excessive texting between a teacher and student to be insufficient to constitute actual knowledge of sexual harassment.  *Doe* v. *Flaherty*, 623 F.3d 577, 585 (8th Cir. 2010) (teacher's inappropriate text messages to female students (*e.g.*, stating "OMG you look good today") and student's "familiar" behavior with teacher did not suggest sexual abuse or conduct); *Romero* v. *City of New York*, 839 F. Supp. 2d 588, 607–08 (E.D.N.Y. 2012) (where plaintiff testified that she and her teacher "did not touch or kiss in the presence of others," her testimony that she and the teacher "regularly walked together in the hallway, ate lunch together, and sat together in the library in plain view of students and staff" was insufficient to create a triable question of fact regarding the school district's knowledge of the improper relationship).  Although Plaintiff further alleges "upon information and belief" that this same Vice Dean had "actual knowledge of Dean Harford's harassment of Plaintiff" (Am. Compl. ¶ 64), she does not set forth any other facts to support this assertion.  Indeed, Plaintiff's allegations in this regard are belied by the incontrovertible fact that as soon as Columbia learned of the true nature of Plaintiff's relationship with Harford, it took immediate action to remove Harford from campus and then

terminate him.  Accordingly, these conclusory statements are insufficient to support a plausible claim for relief under *Iqbal* and *Twombly*.[8]

### 2.      Columbia's Actions Were Not Clearly Unreasonable

Even if Plaintiff had sufficiently alleged that Columbia had actual knowledge of the alleged sexual harassment of her by Harford, her claim still would fail because she cannot allege that Columbia's response was "clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648*; see also Hayut* v. *State Univ. of N.Y.*, 352 F.3d 733, 751 (2d Cir. 2003). While Plaintiff asserts in conclusory terms that Columbia acted with "deliberate indifference" (Am. Compl. ¶¶ 15, 68), the Amended Complaint is devoid of any factual allegations supporting those boilerplate allegations.  *See Gebser*, 524 U.S. at 290 (holding that, to be liable for damages under Title IX, an educational institution's "response must amount to deliberate indifference to discrimination"); *Collins* v. *Fischer*, No. 15-cv-103, 2018 WL 1626528, at *6 (S.D.N.Y. Mar. 30, 2018) ("'[N]aked assertions devoid of further factual enhancement' are insufficient to survive the Motion To Dismiss.") (quoting *Iqbal*, 556 U.S. at 678).

Moreover, as Plaintiff is aware, despite her conclusory allegations to the contrary, once Columbia learned of allegations of sexual harassment against Harford on August 15, 2018, the University acted quickly and reasonably under the circumstances, immediately placing him on leave and then terminating him just a few days later.  In fact, we are not aware of any reported

---

[8]     To the extent that Plaintiff is attempting to impute actual knowledge based on allegations of complaints against Harford from employees or students other than Plaintiff, as discussed further below, Plaintiff fails to allege that these complaints were "sufficiently similar" to the specific conduct such that the University had actual knowledge of the harassment on which her claim is based. *See, e.g., Carabello* v. *N.Y.C. Dep't of Educ.*, 928 F. Supp. 2d 627, 639 (E.D.N.Y. 2013) (although prior report identified that the alleged assailant "has harassed certain female students in ways that are inappropriate," it did not "indicate whether the prior harassment was physical or sexual in nature and, therefore, does not provide actual knowledge of behavior the kind in which plaintiff's legal claim is based") (citations and internal quotation marks omitted); *see also Escue* v. *N. Okla. Coll.*, 450 F.3d 1146, 1154 (10th Cir. 2006) (professor's prior dating of two non-traditional students, a single prior complaint of inappropriate touching, and a single prior complaint involving name-calling incidents did not provide school with actual knowledge that professor posed a substantial risk of sexual harassment to students).

Title IX case in which a college or university was sued in circumstances where it acted as swiftly as Columbia did to remediate the improper conduct here. *Cf. Tubbs* v. *Stony Brook Univ.*, No. 15-cv-0517, 2016 WL 8650463, at *7 (S.D.N.Y. Mar. 4, 2016) (claim based on an investigation taking over three months); *Karasek* v. *Regents of Univ. of Cal.*, 226 F. Supp. 3d 1009, 1031 (N.D. Cal. 2016) (university not deliberately indifferent where it "began investigating [plaintiff's] assault within one month of when she reported it") (emphasis removed) (citation omitted).  Thus, "no reasonable juror could find that" Columbia was "'indifferent' to Plaintiff's complaint." *Tubbs*, 343 F. Supp. 3d at 313.  *See also, e.g.*, *Hayut*, 352 F.3d at 751 (deliberate indifference may be found "when remedial action only follows after a lengthy and unjustified delay" (citations and quotation marks omitted)).  Accordingly, Counts VI and VII of the Amended Complaint should be dismissed as well.

### B.      Title IX Claim Based on Retaliation (Count VIII)

Plaintiff also alleges retaliation under Title IX on the basis that Columbia: (1) restricted her access to University personnel and resources by requesting that she direct all requests relating to her enrollment and use of University resources to a single administrator (Am. Compl. ¶¶ 73–77); and (2) "forcibl[y] evict[ed] . . . Plaintiff from Columbia housing" (*id.* ¶¶ 78–79).

To state a claim for retaliation under Title IX, a plaintiff must show "(1) protected activity; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Bailey* v. *N.Y. Law Sch.*, No. 16-cv-4283, 2017 WL 835190, at *7 (S.D.N.Y. Mar. 1, 2017) (citing *Papelino*, 633 F.3d at 91).  In order to establish an "adverse school-related action," a plaintiff must allege that the action had some "negative effect on [the plaintiff], her education, or her lawsuit." *Carabello*, 928 F. Supp. 2d at 644–45.  Put differently, the action must be one

14

"that a reasonable person would have found . . . materially adverse, which means it well might have dissuaded a reasonable person from making or supporting a complaint." *Id.* at 644 (citation and internal quotation mark omitted).  Here, Plaintiff has failed to allege that the University took any type of action that was actually "adverse" to her.

More specifically, although Plaintiff claims that when she "contacted various school officers and administrators, she was informed that she was only permitted to communicate with the University through a single administrator in the GS Dean of Students Office" (Am. Compl. ¶ 74), she supplies no facts to support the inference that she was thereby deprived of any educational opportunities or that there were any meaningful restrictions placed on her as a consequence.  Plaintiff has not alleged, for example, that the administrator designated as her point-of-contact failed to adequately coordinate or provide the resources or accommodations she needed, nor does she allege that communicating directly with other administrators was the only possible way to obtain resources and accommodations.  Having failed to plausibly allege that she was actually deprived of anything as a result of purportedly being given a single point-of-contact, Plaintiff cannot plausibly allege that a reasonable student in her situation would have been discouraged from filing a complaint.

With respect to her purported "forcible eviction" (*id.* ¶ 79), Plaintiff likewise supplies no specific facts.  The term "forcible eviction" has an accepted and specific meaning under New York law.  *See* Lucas A. Ferrara, LANDLORD AND TENANT PRACTICE IN NEW YORK (2019), § 16:379 (forcible eviction requires a showing "that violence was either threatened or committed").  Plaintiff does not specify that she ever received an eviction notice, who supposedly asked her to leave, or how she was notified—much less that any violence was threatened or committed.  Such information would be squarely within Plaintiff's knowledge had it actually

15

occurred.  *See France* v. *Touro Coll.*, No. 14-cv-4613, 2016 WL 1105400, at \*8 (E.D.N.Y. Feb. 16, 2016), *report and recommendation adopted sub nom. Ueth France* v. *Touro Coll.*, No. 14-cv-4613, 2016 WL 1117459 (E.D.N.Y. Mar. 21, 2016).  The absence of any such allegation is not surprising given that no one at Columbia took any action to evict Plaintiff, "forcibly" or otherwise.[9] And in any event, even if Plaintiff had been asked to leave Columbia housing after withdrawing from the University, she alleges no specific facts to support her wholly conclusory assertion that such a request "was in direct retaliation for her lawful and protected complaints and public lawsuit against the University" (Am. Compl. ¶ 79), as opposed to the fact that she decided to withdraw as a student or failed to pay any rent.  Plaintiff's retaliation allegations (Count VIII) therefore are insufficient to support a plausible claim for relief under *Twombly* and *Iqbal*.

### C.   <u>Gender Discrimination in Terms and Conditions of Education (Count V)</u>

Finally, although the Amended Complaint is far from clear, it appears that Plaintiff's claim of "Gender Discrimination in Terms and Conditions of Education" is intended to be a "direct" claim of gender discrimination against the University, *see Nungesser* v. *Columbia Univ.*, 244 F. Supp. 3d 345, 362 (S.D.N.Y. 2017), as opposed to a claim premised on Harford's alleged sexual harassment of Plaintiff.[10]  In order to make out such a claim, Plaintiff must show that Columbia "discriminated against [her] because of sex; that the discrimination was intentional; and that the discrimination was a 'substantial' or 'motivating factor' for [Columbia's] actions." *Doe* v. *Columbia Univ.*, 101 F. Supp. 3d 356, 367 (S.D.N.Y. 2015) (emphasis removed), *vacated*

---

[9]   Columbia has put Plaintiff on notice that it intends to seek Rule 11 sanctions against Plaintiff and her counsel for asserting factual contentions that lack any evidentiary support.

[10]   While Title VII prohibits discrimination "with respect to . . . terms, conditions, or privileges" relating to employment, 42 U.S.C. § 2000e-2(a)(1), Title IX, relating to education, contains no such language.  As a result, there is no precedent for an analogous Title IX claim based on "gender discrimination in terms and conditions of education."

*and remanded on other grounds*, 831 F.3d 46 (2d Cir. 2016); *see also Pungitore* v. *Barbera*, 506 F. App'x 40, 42 (2d Cir. 2012); *Tolbert* v. *Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001).

Plaintiff fails to identify any purported discriminatory conduct by the University against her that was allegedly motivated by gender animus outside of the allegations of Harford's sexual misconduct, as discussed above.  While Plaintiff alleges that Columbia "fail[ed] to ensure a safe environment for learning and teaching" (Am. Compl. ¶ 7) and "subject[ed] her to disparate terms and conditions of education in violation of Title IX" (Am. Compl. ¶ 144), these statements constitute nothing more than boilerplate and are insufficient as a matter of law.  With respect to Plaintiff's contention that Columbia "treat[ed] her differently from and less preferably than similarly-situated male students" (*id.*), Plaintiff does not allege any facts relating to any male students who were the victims of sexual misconduct and who were treated differently from Plaintiff.  *See, e.g.*, *Baity* v. *Kralik*, 51 F. Supp. 3d 414, 446 (S.D.N.Y. 2014) (denying disparate treatment claim where plaintiff failed to establish that he was "similarly situated in all material respects" to the white individuals to whom he compared himself).  In other words, without more, these "bare assertions . . . amount to nothing more than a 'formulaic recitation of the elements' of a . . . discrimination claim" and cannot survive a motion to dismiss.  *Iqbal*, 556 U.S. at 681.[11]

To the extent that Plaintiff's claim of "Gender Discrimination in Terms and Conditions of Education" is intended to state a claim for what has come to be known as "pre-assault Title IX liability," such a claim is limited to a very narrow set of exceptional circumstances not present here.  The first case to recognize such a claim was *Simpson* v. *University of Colorado Boulder*, 500 F.3d 1170 (10th Cir. 2007).  But the facts in *Simpson* are shocking—it involved a

---

[11]   Any Title IX claim based on Columbia's alleged failure to enforce its anti-gender discrimination policies sound not in disparate treatment, but in disparate impact—for which there is no private cause of action under Title IX. *See Yu* v. *Vassar Coll.*, 97 F. Supp. 3d 448, 461 n.6 (S.D.N.Y. 2015).

university-sanctioned and funded football recruiting program in which female students known as "ambassadors" were paired with male football recruits and asked to show them a "good time," without any supervision.  The plaintiff in *Simpson*, who had been raped by one of those football recruits, alleged that this program had predictably led to an environment in which sexual assault became likely to occur, and the court detailed more than ten years of sexual assaults and rapes specifically related to this "official school program."  *Id*. at 1173–75.  Based on those facts, the United States Court of Appeals for the Tenth Circuit overturned the grant of summary judgment dismissing plaintiff's Title IX claim.  *Id.* at 1180–85.

Since then, the courts have interpreted *Simpson* as "confined to circumstances where a federal funding recipient sanctions a specific program that, without proper control, would encourage sexual harassment and abuse such that the need for training or guidance is obvious." *C.T.* v. *Liberal Sch. Dist.*, 562 F. Supp. 2d 1324, 1339 (D. Kan. 2008).  Such a claim therefore requires a plaintiff to plausibly allege that the "[d]efendants knew about sexual assault(s) committed in a *particular context or program* or *by a particular perpetrator or perpetrators*." *Tubbs*, 2016 WL 8650463, at *9 (emphasis added).  In other words, "something more than general knowledge of assaults campus-wide . . . is required" to sustain a claim for pre-assault Title IX liability.  *Id.*

Here, in order to plead a claim for pre-assault Title IX liability, Plaintiff alleges that Columbia "has a track record of violating Title IX when responding to reports of sexual misconduct" (Am. Compl. ¶ 5), "failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination" (*id.* ¶ 147), "fails to appropriately sanction Columbia faculty members and administrators who hold prominent positions in the University" (*id.* ¶ 5), and was subject to an investigation into its Title IX compliance by the Office

for Civil Rights in 2014 (*id.* ¶ 6).  Not only are such allegations not related to any specific "official school program" of Columbia or "particular perpetrators," but nearly identical allegations have been rejected by Judge Daniels as a sufficient basis to state such a claim against Columbia.  *See Roskin-Frazee*, 2018 WL 6523721, at *5 ("While these allegations may support the inference that Defendant was generally aware of the problem of sexual misconduct on campus and a deficiency in response to such a problem, this general level of awareness or deficiency is insufficient for purposes of asserting pre-assault, Title IX liability.").  *See also C.T.*, 562 F. Supp. 2d at 1339–40 (plaintiff's allegations that school district had been aware "for decades" of risk of sexual misconduct by teachers, had "specific knowledge about prior instances of sexual harassment in the school district," and had "failed to implement meaningful sexual harassment policies and adequately train its personnel," were insufficient for Title IX liability).

Plaintiff's other allegations, which relate primarily to issues Harford allegedly had with his co-workers, not students, do not come close to the extreme circumstances present in *Simpson*.  Plaintiff alleges, for example, that a "complaint was filed against Dean Harford for stalking and harassment of a female co-worker" (Am. Compl. ¶ 58), and that prior to 2013, he had been "accused of harassing a subordinate" (*id.* ¶ 57).  But in order to state a pre-assault Title IX claim, the University must have knowledge that the alleged perpetrator posed a "substantial risk of serious harm" based on "multiple prior allegations of the *same or similar* conduct that is at issue."  *Tubbs*, 2016 WL 8650463, at *9 (citing *Zamora* v. *N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 424 (S.D.N.Y. 2006) (emphasis added)).  *See also Doe* v. *E. Irondequoit Cent. Sch. Dist.*, No. 16-cv-6594, 2018 WL 2100605, at *22 (W.D.N.Y. May 7, 2018).  The two vague instances of alleged misconduct relating to other Columbia *employees* are not "sufficiently similar" to the type of improper "DD/LG" *student* relationship that Plaintiff alleges in this case, since

19

"[s]chool officials must at least have actual knowledge of an employee's potential *to abuse a student*." *Doe*, 2018 WL 2100605, at *21 (internal quotation marks omitted, emphasis added). Therefore, even if there were any veracity to these allegations—which the University does not concede—this would not amount to the kind of situation that would be required to put Columbia on notice that Harford posed a "substantial risk of serious harm" with respect to students. *Tubbs*, 2016 WL 8650463, at *9. *See also Escue* v. *N. Okla. Coll.*, 450 F.3d 1146, 1149–54 (10th Cir. 2006) (prior complaints of sexual harassment not sufficiently similar because "too dissimilar, too infrequent and/or too distant in time" and did not involve "anywhere near the degree of overt and pervasive harassment" alleged); *cf. Doe 1* v. *Baylor Univ.*, 240 F. Supp. 3d 646, 653–56, 662 (W.D. Tex. 2017) (denying dismissal of pre-assault claim based on ten detailed accounts of systemic university failures in responding to peer sexual assault across more than a decade, where university allegedly "repeatedly misinformed victims of sexual assault as to their rights under Title IX; failed to investigate reported sexual assaults; . . . discouraged those who reported sexual assaults from naming their assailants or otherwise coming forward;" and "despite being informed of multiple sexual assaults between 2008 and 2011, . . . reported to the U.S. Department of Education that no such assaults took place on its campus during that period") (citations omitted).

As for her allegation that "Harford told Plaintiff that he had been reported to Columbia University's President by a student on involuntary medical leave" (Am. Compl. ¶ 47), Plaintiff provides no information as to the nature of that complaint and there is no basis for believing that such a complaint related to harassment of any kind, sexual or otherwise (*id.* ¶¶ 37, 42, 47). This alleged complaint, assuming it happened, could have related to the grades of the student in question, a conflict between students, or mental health matters, all issues within Harford's purview as Dean of Students. In other words, the very vagueness of this allegation

makes it clear that it cannot satisfy the demanding standard required for pre-assault Title IX liability. *See, e.g.*, *Tubbs*, 343 F. Supp. 3d at 320 (rejecting pre-assault Title IX claim where "Plaintiff has not produced one iota of evidence revealing that University had specific knowledge that [the alleged assailant] ever had any sort of history of sexual harassment anywhere"). Here, "in contrast [to *Simpson*], there is nothing in the record to suggest that [Columbia] took any steps to condone or encourage sexual assault or harassment on campus. And there is no similar lack of control over discrete groups of [employees] known—or even encouraged—to engage in sexual misconduct." *Doe* v. *Bibb Cty. Sch. Dist.*, 688 F. App'x 791, 797 (11th Cir. 2017). Accordingly, Count V of the Amended Complaint should also be dismissed.

## II.      PLAINTIFF'S NON-FEDERAL CLAIMS SHOULD BE DISMISSED

### A.      Supplemental Jurisdiction

Because there is no diversity between the parties, Plaintiff's sole basis for federal question jurisdiction is her Title IX claim. Since, as discussed above, Plaintiff fails to state a claim under Title IX, the Court should decline to exercise supplemental jurisdiction over the remaining claims alleged in the Amended Complaint. *See* 28 U.S.C. § 1367(c). The Supreme Court has made it clear that "when the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." *Carnegie-Mellon Univ.* v. *Cohill*, 484 U.S. 343, 350 (1988). As the Court itself noted at the conference in this matter on January 31, 2019, the Secord Circuit similarly "takes a strong position that state issues should be decided by state courts." *Cohen* v. *Postal Holdings, LLC*, 873 F.3d 394, 405 (2d Cir. 2017) (Calabresi, J., concurring).

If the court chooses to exercise supplemental jurisdiction over these claims, they should be dismissed for the following reasons.

B.    **NYCHRL (Counts I, II, III & IV)**

Plaintiff asserts four causes of action against Columbia under the New York City Human Rights Law ("NYCHRL"):  Gender Discrimination in Terms, Conditions and Privileges (Count I); *Quid Pro Quo* Sexual Harassment (Count II); Hostile Educational Environment (Count III); and Retaliation (Count IV).  As with Plaintiff's similar claims under Title IX, Plaintiff fails to state a plausible claim under any of these four theories.

1.    **Counts I, II, and III**

Plaintiff appears to bring Counts I, II, and III under Subsection 8-107(4), the public accommodation provision of the NYCHRL.  (*See* Am. Compl. ¶¶ 90–91 (stating that Plaintiff has been subjected to "discrimination in the terms, conditions, or privileges of public accommodation").)  To state a claim under NYCHRL § 8-107(4), Plaintiff must plead specific, plausible allegations indicating that she was refused or denied "the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges" of Columbia because of her sex.  N.Y.C. Admin. Code § 8-107(4)(a)(1)(a).  While courts have not applied a consistent standard in evaluating claims under the NYCHRL in the public accommodations context, it would make sense that claims concerning an educational institution should more closely mirror the federal Title IX standard, rather than the Title VII employment standard.  Regardless, Plaintiff's Amended Complaint fails under any version of the applicable test.

As discussed above in connection with her Title IX claims, Plaintiff alleges no specific, non-conclusory facts to support a claim that Columbia denied her the opportunity to attend or succeed at the University; indeed, nothing in the Amended Complaint supports a plausible inference that Plaintiff was denied "any of the accommodations, advantages, services, facilities or privileges" of the University.  *Id*.  In fact, Plaintiff concedes that after "she reached

out to Columbia for help," the University granted her access to safe emergency housing. (Am. Compl. ¶ 18.) Moreover, Plaintiff admits that she received additional accommodations from the University, including access to therapy through University healthcare services, before she was enrolled (*id.* ¶ 29), which is when students are normally entitled access to those University services, facilities, and privileges. And the University also responded quickly and appropriately when it learned of Plaintiff's allegations, promptly removing Harford from campus and terminating him before Plaintiff filed her original Complaint. (*See id.* ¶ 20.)

These facts stand in dramatic contrast to those public accommodations cases in which plaintiffs have been found to have stated a claim under the NYCHRL. *See, e.g.*, *Martin* v. *J.C. Penney Corp.*, 28 F. Supp. 3d 153, 156 (E.D.N.Y. 2014) (plaintiffs were assaulted and falsely imprisoned on suspicion of shoplifting because of race and gender); *Comm'n on Human Rights* v. *ISS Action Sec.*, OATH 674/ 11, Rep. & Rec., 2011 WL 12521359, at *5 (Apr. 12, 2011), *adopted*, Dec. & Ord. (June 26, 2011) (plaintiff barred access to a public accommodation after being questioned about his disability and told by a security guard to leave upon disclosing his disability).

In employment discrimination cases brought under the NYCHRL § 8-107(1),[12] the Second Circuit has held that a plaintiff may state a claim for "unwanted gender-based conduct," including sexual harassment, under the NYCHRL by demonstrating "by a preponderance of the evidence that she has been treated less well than other employees because of her gender." *Mihalik* v. *Credit Agricole Cheuvreux N. Am., Inc.*, 715 F.3d 102, 110 (2d Cir. 2013) (quoting *Williams* v. *N.Y.C. Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009)). We are aware of only one case in which a court has applied the standard articulated in *Mihalik* to claims against an

---

[12] Plaintiff does not allege that she was an employee of Columbia or that this case involves employment discrimination. Accordingly, Subsection 8-107(1) of the NYCHRL does not apply to her claims. *See* N.Y. Admin. Code § 8-107(1) (governing unlawful discriminatory practices in "[e]mployment").

23

educational institution under the NYCHRL's public accommodations provision. In *Novio* v. *New York Academy of Art*, Judge Sweet determined that in order for a student-plaintiff to state a claim against a school under the NYCHRL, the plaintiff must "show that she has been treated 'less well' than other [students] because of a protected characteristic." 286 F. Supp. 3d 566, 583 (S.D.N.Y. 2017) (citation omitted). In that case, a student who alleged that a professor sexually harassed her brought a claim for sex discrimination under the NYCHRL against the professor, the university that employed him, the university president, and the holding company that owned the university. *Id.* at 584. Although the court found that the allegations concerning the professor—namely that his "comments were directed only at female students and that his physical hugging and touching was focused only toward women"—were sufficient to state a claim against the professor, these same allegations did not give rise to a colorable claim against the educational institution and the other defendants. *Id.* Here, as in *Novio*, Plaintiff fails to allege any facts demonstrating that the University itself (as opposed to Harford) treated her "less well" than other students because of her gender.

### 2. Count IV

Similar to a Title IX retaliation claim, in order to state a claim for retaliation under the NYCHRL, a plaintiff must plausibly allege "that, as a result of her engaging in a protected activity, some action was taken that would be reasonably likely to deter her from engaging in the activity again." *Gaughan* v. *Rubenstein*, 261 F. Supp. 3d 390, 406 (S.D.N.Y. 2017). Here, as discussed above, retaliatory animus cannot be inferred from the mere allegation that Columbia asked Plaintiff to direct her inquiries through one particular GS administrator (Am. Compl. ¶ 74) or from her wholly conclusory allegation that she was "forcibly evicted" from Columbia housing (*id.* ¶¶ 78–79).

24

C.     **Negligent Supervision/Retention (Count IX)**

To state a claim for negligent supervision under New York law, a plaintiff must establish, in addition to "the standard elements of negligence":[13] "(1) that the tort-feasor and the defendant were in an employee-employer relationship; (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence; and (3) that the tort was committed on the employer's premises or with the employer's chattels." *Ehrens* v. *Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (internal quotation marks and citations omitted).  In cases involving allegations of sexual misconduct, New York courts have made it clear that "an employer is only liable for negligent supervision or retention if it is aware of *specific prior acts or allegations against the employee*."  *Doe* v. *Alsaud*, 12 F. Supp. 3d 674, 680 (S.D.N.Y. 2014) (emphasis added).  Those acts "must be of the same kind that caused the injury," since "general, unrelated, or lesser allegations of prior wrongdoing are insufficient," as are conclusory allegations about an employee's "predisposition for sexual violence."  *Id.* at 680–81.

In *Alsaud*, Judge Sweet dismissed a plaintiff's claim for negligent retention and supervision notwithstanding the plaintiff's allegation that the employee in question had a "predisposition for sexual assault."  *Id.* at 681.  The court reasoned that, absent some allegation of a "prior act or allegation of sexual misconduct committed by [the employee]" or "a fact suggesting that [the employer] knew or should have known of any such prior acts," the plaintiff's claim necessarily failed.  *Id.* at 680; *see also Hopper* v. *Banana Republic, LLC*, No. 07-cv-8526, 2008

---

[13]     In this regard, Plaintiff has not alleged facts to support an inference that Columbia owed her a duty of care, as is required to state any claim sounding in negligence.  "New York has affirmatively rejected the doctrine of *in loco parentis* at the college level."  *Ginsburg* v. *City of Ithaca*, 839 F. Supp. 2d 537, 543 (N.D.N.Y. 2012) (citation omitted).

WL 490613, at *2 (S.D.N.Y. Feb. 25, 2008) (court dismissed negligent hiring claim where complaint alleged that employer had failed to adequately investigate the employee's background).

Here, as discussed above, Plaintiff fails to allege a single specific fact showing that Harford committed prior acts of the kind alleged here or that Columbia knew or should have known about such prior acts.  Plaintiff's bare allegation that "Columbia knew, or in the exercise of reasonable care should have known, that Dean Harford was not fit for a position in which he would be working with and advising young, female students" (Am. Compl. ¶ 67) is clearly insufficient to state a claim under New York law.  *Hopper*, 2008 WL 490613, at *2 (dismissing negligent hiring claim arising out of an employee's alleged sexual harassment where complaint alleged that an employee lacked "maturity" and "sensibility"); *see also Herskovitz* v. *Equinox Holdings, Inc.*, 2013 NY Slip. Op. 31193(U), 2013 WL 2642956, at *10–11, (Sup. Ct. N.Y. Cty. June 3, 2013). Accordingly, Count IX of the Amended Complaint should also be dismissed.

## III.    PLAINTIFF'S $60 MILLION *AD DAMNUM* CLAUSE SHOULD BE STRICKEN

If any part of the Amended Complaint survives Columbia's motion to dismiss, Columbia respectfully requests that the Court strike the *ad damnum* clause of the Amended Complaint pursuant to Rule 12(f) of the Federal Rules of Civil Procedure.

Under Rule 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Specifically, a demand for damages may be stricken where a defendant demonstrates: "(1) that no question of fact which might allow [p]laintiff's claim to proceed exists; (2) that no substantial question of law, a resolution of which would help the [p]laintiff's claim succeed, exists; and (3) that [the defendant] is prejudiced by the inclusion of this claim."  *Wyeth* v. *King Pharm., Inc.*, 396 F. Supp. 2d 280, 293 (E.D.N.Y. 2005). Accordingly, demands for damages that are "clearly excessive and unattainable," *Lumbard* v. *Maglia, Inc.*, 621 F. Supp. 1529, 1538 (S.D.N.Y. 1985), may be stricken under Rule 12(f),

including because such demands are "not reasonably related" to the factual allegations and thus "serve[] no useful purpose," *Shaw* v. *Equitable Life Assurance Soc'y of U.S.*, No. 82 C 1421, 1982 WL 1460 at *2 (N.D. Ill. Oct. 29, 1982).

Here, it is virtually impossible for Plaintiff to recover compensatory damages sufficient to support a total award of $60 million inclusive of punitive damages. Plaintiff knew defendant Harford for approximately three months, May–August 2018. (Am. Compl. ¶¶ 8, 50.) She does not allege any physical violence or nonconsensual sexual activity and their improper relationship lasted for less time than that. Her compensatory damages would therefore be highly unlikely to exceed $2 million. *See, e.g.*, *MacMillan* v. *Millennium Broadway Hotel*, 873 F. Supp. 2d 546, 561 (S.D.N.Y. 2012) ("In the Second Circuit, 'garden variety' emotional distress claims generally merit $30,000 to $125,000 awards."); *Caravantes* v. *53rd St. Partners, LLC*, No. 09-cv-7821, 2012 WL 3631276, at *24 (S.D.N.Y. Aug. 23, 2012) (awarding $150,000 in compensatory damages under the NYCHRL for "egregious" emotional distress where the plaintiff was the victim of various acts of unwanted physical contact, including groping and frequent forced oral and anal sex, over the course of multiple years).

Accordingly, in order to reach $60 million, Plaintiff would need to obtain a punitive damages verdict an order of magnitude far greater than her best-case compensatory award. But there are several insuperable obstacles to such an award. First, punitive damages are not available under Title IX. *See Benacquista* v. *Spratt*, 217 F. Supp. 3d 588, 607 (N.D.N.Y. 2016) (following *Mercer* v. *Duke Univ.*, 50 F. App'x 643, 644 (4th Cir. 2002)). Second, the standard for awarding damages under the NYCHRL is stringent, requiring, for example, proof of "discrimination with willful or wanton negligence" or a "conscious disregard of the rights of others." *Chauca* v. *Abraham*, 89 N.E.3d 475, 481 (N.Y. 2017). There are no plausible allegations in the Amended

Complaint that Columbia has engaged in such egregious discrimination. And, last, but certainly not least, the Supreme Court has made it clear that "few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process." *State Farm Mut. Auto. Ins. Co.* v. *Campbell*, 538 U.S. 408, 425 (2003). Indeed, "an award of more than four times the amount of compensatory damages might be close to the line of constitutional impropriety." *Id*. Thus, even if Plaintiff were awarded as much as $5 million in compensatory damages—and such an award is highly unlikely—to reach $60 million, she would need to recover $55 million in punitive damages. This would result in an 11:1 ratio that would undeniably be "grossly excessive" and thus violate due process.

This Court's recent decision in *Mayo-Coleman* v. *American Sugar Holdings, Inc.*, No. 14-cv-0079, 2018 WL 2684100 (S.D.N.Y. June 6, 2018) (Crotty, J.), is instructive. The plaintiff in that case sued her former employer under Title VII and the New York State Human Rights Law. The evidence showed that plaintiff was constantly harassed over a period of five years, with her supervisor repeatedly engaging in conduct such as "constantly leering" at her, "licking his lips," and calling her "into his office, instruct[ing] her to close the door [and] stand next to him," and "smacking her on her rear end." *Id*. at *3 (internal quotation marks omitted). This caused the plaintiff "severe emotional distress" that required her to leave her job and seek treatment. *Id*. at *3. The jury awarded the plaintiff $1.7 million in compensatory damages and $11.7 million in punitive damages. *Id.* at *1. Despite finding that the case involved "extraordinary circumstances," the court nevertheless remitted the plaintiff's emotional distress damages from $1.7 million to $500,000 and reduced the punitive damages award to $299,999. *Id*. at *7. The Court reached the punitive damages figure in part because it comported with the damages cap under Title VII of $300,000, but also because because it was "reasonable and proportionate to the

28

amount of harm to the plaintiff and to the general damages recovered" and thus comported with due process. *Id*. at \*6.

There can be no question that Columbia is prejudiced by the inclusion of Plaintiff's demand for $60 million in damages. Permitting Plaintiff's $60 million demand to remain in the operative pleading in this case prejudices Columbia because it distracts from the relevant facts and legal merits (or lack thereof) and creates a distorted picture of what is actually alleged and what may be recovered. In essence, the demand "serves no purpose except to inflame the reader, and accordingly, [should] be stricken." *Oram* v. *SoulCycle LLC*, 979 F. Supp. 2d 498, 512 (S.D.N.Y. 2013) (quotation marks omitted). At the very least, the *ad damnum* clause "serves no useful purpose," *Shaw*, 1982 WL 1460 at \*2, other than to present the jury with "a large, easily remembered figure," *id.* at \*1, and thus should be stricken.

## CONCLUSION

For the foregoing reasons, Columbia respectfully requests that the Court grant its motion to dismiss the Amended Complaint against Columbia in its entirety with prejudice. In the event that Columbia's motion to dismiss is denied in whole or in part, Columbia respectfully requests that the Court strike the *ad damnum* clause in the Amended Complaint.

Dated:  February 12, 2019

Respectfully submitted,

By: _____

Roberta A. Kaplan
Gabrielle E. Tenzer
Alexandra G. Elenowitz-Hess
KAPLAN HECKER & FINK LLP
350 Fifth Avenue, Suite 7110
New York, NY 10118
(212) 763-0883

29

rkaplan@kaplanhecker.com
gtenzer@kaplanhecker.com
ahess@kaplanhecker.com

Michele S. Hirshman
Darren W. Johnson
PAUL, WEISS, RIFKIND,
WHARTON & GARRISON LLP
1285 Avenue of the Americas
New York, NY 10019-6064
Phone: (212) 373-3000
Fax: (212) 757-3990
mhirshman@paulweiss.com
djohnson@paulweiss.com

*Attorneys for Defendant The Trustees of*
*Columbia University in the City of New York*