## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IRENE POLITIS,** | **SECOND AMENDED COMPLAINT** |
| **PLAINTIFF,** | |
| **-- against --** | **JURY TRIAL DEMANDED** |
| **THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK AND THOMAS HARFORD,** | |
| **DEFENDANTS.** | |

Plaintiff Irene Politis ("Plaintiff" or "Ms. Politis"), by and through her attorneys, Sanford Heisler Sharp, LLP, brings this action against The Trustees of Columbia University in the City of New York ("Columbia University," "Columbia," or "the University") and Thomas Harford ("Dean Harford").  Plaintiff alleges upon knowledge concerning her own acts and upon information and belief as to all other matters.

### I.    OVERVIEW

1.    Columbia University is one of the top universities in the world.  To match its academic reputation, Columbia touts its campus as a safe and nurturing learning environment for all students.

2.    On Columbia's online homepage, the University advertises its "commit[ment] to providing a learning, living, and working environment free from unlawful discrimination and harassment and fostering a nurturing and vibrant community founded upon the fundamental dignity and worth of all its members."

3.     In addition, the University's "Consensual Romantic and Sexual Relationship Policy Between Staff and Students" states that "No staff member at Columbia should participate in supervision, employment actions, evaluation, advising or mentoring any Columbia University student with whom that staff member has or has had a consensual romantic or sexual relationship, except in unusual circumstances.  In the event that a personal relationship of this kind does exist in a supervisory, advisory or mentoring context, the supervisor must disclose the relationship and initiate arrangements to address any issues of conflict of interest."

4.     To many women of Columbia University, this "policy" is a sham and a cruel joke.

5.     Although Columbia pays lip service to the ideals of a safe campus environment, the University has a track record of violating Title IX when responding to reports of sexual misconduct.  When students have reported sexual harassment to Columbia's administrators, officers, and employees (such agents, unless referred to by name or position, hereinafter referred to as "Columbia"), Columbia has shown deliberate indifference to their complaints.  In responding to complaints of sexual harassment, the University fails to appropriately sanction Columbia faculty members and administrators who hold prominent positions in the University.

6.     In 2014, Columbia became the subject of a formal investigation by the Office for Civil Rights, part of the United States Department of Education, related to its compliance with Title IX, 20 U.S.C. § 1681 ("Title IX"), when responding to complaints of sexual harassment.

7.     Columbia's failure to ensure a safe environment for learning has been particularly acute with respect to Ms. Politis, a former student at Columbia's School of General Studies ("GS").

8.     In May 2018, Ms. Politis was raped while staying at an acquaintance's apartment. She sought assistance from Columbia's Sexual Violence Response & the Rape Crisis/Anti-Violence Support Center ("SVR").   Realizing that Ms. Politis lacked a safe place to live, SVR

directed her to Thomas Harford, GS Dean of Students, to provide her with emergency housing and other assistance following Plaintiff's assault.

9.      From the very first time that Ms. Politis met Dean Harford to discuss her housing options, Dean Harford engaged in inappropriate and manipulative behavior.   Recognizing Plaintiff's vulnerabilities, Dean Harford provided her with money and promised to help her secure additional scholarship funding for the Fall semester.

10.      Over the course of the summer, Harford used his power and influence at Columbia to coerce Ms. Politis into an inappropriate sexual and romantic relationship.   Dean Harford subjected Ms. Politis to unwanted, abusive, and inappropriate sexual activity; told her stories about his violent past to intimidate her; and used her need for scholarship funding and disability accommodations as bait to keep her in the relationship.

11.      Columbia failed to protect Ms. Politis from Dean Harford, who—as the Dean of Students of GS—should have been the very authority figure that supported and protected her.

12.      Columbia had actual knowledge of both Dean Harford's reputation and history of bad behavior with other women at the University, as well as knowledge that Dean Harford had initiated an inappropriate relationship with Plaintiff.

13.      Dean Harford and Columbia's conduct caused Ms. Politis severe trauma.   As a result, Ms. Politis requires intensive medical treatment, including continuous mental health care.

14.      Columbia's response to the sexual harassment so undermined and detracted from Plaintiff's educational experience that Ms. Politis was effectively denied access to educational resources, benefits, and opportunities.   Indeed, she was forced to withdraw from the University as a result of Columbia's response and subsequent retaliation.

15.     As a result of the actions of Dean Harford, Ms. Politis was subjected to harassment based on her gender.  This harassment was sufficiently severe and pervasive to create a continuing and persistent abusive educational environment because of Columbia's deliberate indifference.

16.     Ms. Politis brings claims under the New York City Human Rights Law, New York City Administrative Code, § 8-107, *et seq.* ("NYCHRL"); Title IX of the Education Amendments of 1972, as amended, 20 U.S.C. § 1681 *et seq.* ("Title IX"); and New York common law.  She seeks damages to redress the injuries she has suffered as a result of being sexually harassed, discriminated against, and retaliated against on the basis of her gender by Defendants.

17.     Ms. Politis went to the Dean of Students of GS in desperate need of protection after she was raped, and weeks later, the Dean was intimately and sexually touching her body.  Dean Harford told Ms. Politis that he wanted to take care of her, and repeatedly told her that he gave her everything that she had at Columbia, and could also get her everything that she needed.  Dean Harford inserted himself into Ms. Politis's life when she was at her most vulnerable, and as a function of survival, Ms. Politis acquiesced to Dean Harford's sexual and romantic advances.  Ms. Politis went to Columbia for protection and safety, and instead the University exposed her to another predator who wielded his unchecked power to control Ms. Politis's access to University resources—resources that he knew she desperately needed.  While Ms. Politis had a bright future full of potential when she was accepted to Columbia University, and was eager and excited to complete her undergraduate education, as a result of Dean Harford and Columbia's actions, she now experiences nearly constant anxiety, disassociation, and despair.

## II.     <u>THE PARTIES</u>

18.     **PLAINTIFF** was a 25-year-old student when enrolled in Columbia's GS school. She initially intended to begin her studies in the Fall of 2018, but after she was sexually assaulted

4

while staying with an acquaintance, she reached out to Columbia for help.  She began living in Columbia housing in May 2018.  At all relevant times, Ms. Politis was domiciled in Manhattan, and she attended Columbia University in Manhattan.

19.      **DEFENDANT THE TRUSTEES OF COLUMBIA UNIVERSITY IN THE CITY OF NEW YORK** is a private university that, upon information and belief, receives federal funding.  Columbia is based in Manhattan.

20.      **DEFENDANT THOMAS HARFORD** is a 56-year-old male who formerly served as the Dean of Students of Columbia's GS school.  As Dean of Students, Harford was the highest-ranking official of the office that claims it is the "primary source of advising for students at the School of General Studies."  At all relevant times, Harford was domiciled in Manhattan, and he worked for Columbia University in Manhattan.

### III.      JURISDICTION AND VENUE

21.      This Court has jurisdiction over this suit pursuant to 28 U.S.C. § 1331 because this action involves claims brought under Title IX.  This Court has supplemental jurisdiction over Plaintiff's claims under the New York City Human Rights Law and New York common law pursuant to 28 U.S.C. § 1367.

22.      Venue is proper in this District under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f).  Defendant Columbia is headquartered in this District, and Defendant Harford is domiciled in this District.  The unlawful educational practices complained of herein occurred in this District, and the events or omissions giving rise to Plaintiff's claims occurred in this District.

## IV.   FACTUAL ALLEGATIONS

### A.  Plaintiff's Background

23.     Ms. Politis has had an objectively difficult life.  She is largely estranged from her family and has struggled to secure stable housing and employment.  Determined to pursue higher education to improve her situation, Ms. Politis applied to Columbia's School of General Studies and was accepted.  She intended to begin school in September 2018.

24.     In May 2018, Ms. Politis was homeless and would sleep on friends' and acquaintances' couches around New York City.  In early May 2018, Ms. Politis was raped while staying with an acquaintance.  She completed a rape kit and reported the rape to the NYPD Special Victims Division.

### B.  Plaintiff Seeks Assistance and Protection from Columbia, and Is Directed to Dean Harford

25.     Feeling scared and unsafe because she was raped, Ms. Politis reached out to Columbia seeking assistance and protection.   She first reached out to Columbia's SVR.  Recognizing her need for emergency housing, SVR reached out to Columbia's University Apartment Housing office, but was told that GS Dean of Students Thomas Harford would have to advocate for Ms. Politis to get housing.

26.     Ms. Politis first met with Dean Harford on May 10, 2018 in his office.  Dean Harford assured her that he would help her by providing emergency housing.

27.     Dean Harford asked Ms. Politis to return to his office the following morning.  At that meeting, Dean Harford asked whether Ms. Politis had any money.  Ms. Politis told Dean Harford that she had no money.  In response, Dean Harford said, "that's what I thought," and then took $500 cash from his pocket and gave the money to Ms. Politis.  She thought it was strange to

receive cash from an administrator, but because she needed money, she accepted the cash from Dean Harford.

28.     Also at this second meeting, Dean Harford promised to come up with a "creative scholarship plan" for Ms. Politis.  Ms. Politis desperately needed scholarship money in order to attend GS in the Fall and was encouraged by Dean Harford's willingness to help her.

29.     Around the time of these initial meetings, Ms. Politis asked Dean Harford for assistance in connecting with Columbia's Counseling and Psychological Services ("CPS"), which she could not access absent intervention from a Columbia administrator.  Realizing her need for intensive emotional and psychological support, Dean Harford arranged for Ms. Politis to meet with a therapist at CPS.

30.     Within the first few days of meeting, Dean Harford also assisted Ms. Politis in accessing Columbia health services so that she could acquire necessary prophylactic medication following her sexual assault.

### C.  Dean Harford Uses His Position of Authority to Manipulate Plaintiff into a Romantic and Sexual Relationship

31.     Beginning with their earliest interactions, Defendant Harford positioned himself as the gatekeeper to Columbia University resources that Ms. Politis desperately needed.  Dean Harford then began to pursue an inappropriate and manipulative relationship with Ms. Politis, first by exchanging flirtatious text messages and frequently speaking on the phone and over video chat.

32.     Dean Harford reminded Ms. Politis of his control over her access to Columbia resources in the midst of these flirtatious text messages, pressuring Ms. Politis to submit to his sexual advances despite her discomfort.  For example, on July 26, 2018, Dean Harford demanded to know Ms. Politis's dress size and then reminded her about an upcoming meeting where he would be advocating for her scholarship funding.

33.     Dean Harford exploited Ms. Politis's vulnerability as a recent victim of rape by repeatedly engaging in inappropriate sexual contact with her, and continuously encouraging her to stay in contact with him if she encountered any issues at the school.

34.     Feeling powerless and desperately in need of financial support and disability accommodations, Plaintiff engaged in a sexual and romantic relationship with Dean Harford in response to his repeated coercive advances.

35.     Ms. Politis felt forced to continue the sexual relationship because Dean Harford— whom Ms. Politis considered her "lifeline" at Columbia—promised to "take care of" her and controlled her access to housing, psychological services, disability accommodations, and other Columbia resources.

36.     Indeed, Dean Harford repeatedly emphasized his control over these resources, reminding Ms. Politis that he had "put [her] up" in her housing and promising to "lobby" for her scholarship funding.

37.     Dean Harford further manipulated Ms. Politis into trusting him by promising to assist her in receiving disability accommodations from Columbia.  Ms. Politis had requested accommodations upon acceptance to the University, but her requests were denied despite her well-documented needs.  The first time that Dean Harford visited Ms. Politis at her apartment, he told her not to worry about the fact that her disability accommodations were denied because "Daddy will talk to [the Disability Office]."

38.     Dean Harford coerced Ms. Politis into becoming financially dependent on him, instructing her to accept cash from him because she was "financially needy."  On numerous occasions, Dean Harford provided her with cash and purchased her school supplies, food, and cabs. Dean Harford ensured that Ms. Politis remained financially dependent on him by repeatedly

offering her cash.  On August 6, 2018, Dean Harford sent a message to Ms. Politis stating, "I think I need to give you more cash…Will that make you uncomfortable? Hehe."

39.     Dean Harford unilaterally assumed control of Ms. Politis's mental health treatment, communicating directly with Ms. Politis's CPS therapist and facilitating her therapy appointments.

40.     Dean Harford also repeatedly provided Ms. Politis with unauthorized medical advice concerning her medication and trauma, and repeatedly emphasized his understanding of her mental health concerns.

41.     Ms. Politis informed Dean Harford that she was having suicidal thoughts on numerous occasions.  Rather than seeking professional help, Dean Harford minimized Ms. Politis's suicidal thoughts and advised her that she should take anti-anxiety medication to cope.  Just one day after suggesting that Ms. Politis take anti-anxiety medication, Dean Harford opined that her suicidal thoughts may actually be the result of anti-anxiety medication.  Dean Harford never sought medical treatment or professional assistance for Ms. Politis's suicidal thoughts, or otherwise reported her suicidal ideations.

42.     On another occasion, Ms. Politis was locked out of her apartment, and Dean Harford asked for her address.  Ms. Politis joked that she could not keep track of her own keys. Dean Harford responded, stating:  "Princess! Keep a spare in my office—everyone should have a spare!"  Dean Harford thereafter kept a spare set of keys to Ms. Politis's apartment in his office at Columbia.  Dean Harford told Ms. Politis that she was a "good girl" for keeping the spare set of keys in his office as directed.

43.     On another occasion, shortly before a scholarship meeting at which Dean Harford promised to advocate for Ms. Politis, Dean Harford went to Ms. Politis's apartment and engaged in inappropriate sexual acts with her.  Prior to entering Ms. Politis's apartment, Dean Harford

messaged her stating, "I usually only enter student housing when I'm doing a wellness check. You're icing your [groin post-waxing], so it's a wellness check!"

44.     When Dean Harford was at Ms. Politis's apartment, he told her that he used to be very violent and had broken someone's legs with a bat when he was younger.  This story scared Ms. Politis into believing that Dean Harford might become violent with her.

45.     In addition, Dean Harford engaged in inappropriate sexual acts with Ms. Politis while on Columbia's campus.  On one occasion, Dean Harford kissed Plaintiff in the stairwell of Dodge Hall.  On multiple occasions, Dean Harford locked the door and lowered the shades of his administrative office and engaged in sexual acts with Plaintiff while in his office.  Upon information and belief, administrators in neighboring offices overheard these incidents.  On one occasion, Dean Harford told Ms. Politis that they would have to keep their volume down during sex acts because a colleague in a neighboring office had returned from vacation.

46.     Dean Harford further abused his position of power at the University by sharing information with Ms. Politis about other Columbia administrators.  For instance, Dean Harford called one of Plaintiff's professors "a cipher, a nothing"; compared another GS Dean's Office staff member to an animal; described one member of the administration as "the most lethargic and depressing colleague" he had ever known; and commented that another GS administrator was "an idiot" and needed to retire.

47.     Dean Harford also shared confidential information about other Columbia students with Ms. Politis.  For example, on August 5, 2018, Dean Harford told Ms. Politis, "Daddy has an emergency with public safety so he has to handle.  Yep – pain in the ass.  Not in [t]he mood for this.  Why can't they all be like my princess????" The following day, Dean Harford shared more details about this incident with Plaintiff, including Facebook messages and text messages in which

the student in question expressed suicidal ideations.  Dean Harford also disclosed to Plaintiff the details about another emotionally distraught student he attended to that same night.  On another occasion, Dean Harford shared with Plaintiff the name and details of a student who had self-mutilated in the bathroom of a Columbia administrative building.  Dean Harford also denigrated a former Columbia student's performance artwork in which she carried a mattress around the University to protest rape on campus, calling it "simplistic" and "pretty dumb."  On another occasion, Dean Harford told Plaintiff that he had been reported to Columbia University President Lee Bollinger by a student on involuntary medical leave.

48.     Ms. Politis feared that the confidential and personal details of her rape and mental health would be similarly shared with other Columbia students and faculty if she discontinued her relationship with Dean Harford or objected to his advances.

49.     Ms. Politis's trauma from the rape became compounded with Dean Harford's advances, and she told Dean Harford how the relationship was affecting her.  Dean Harford assured Ms. Politis that they could "make [the relationship] work."  When Plaintiff reiterated her discomfort with the relationship, Dean Harford suggested that she transfer to a different school.

50.     On August 14, 2018, Dean Harford explicitly acknowledged his wrongdoing in messages to Ms. Politis, stating:  "I know I failed you, and I know that means I've failed personally and as the dean of students . . . I think that—I think I may not be the person who should do this position anymore.  Maybe I'm too faulty for that now."  He went on to say "I know you hurt, but know that [I] do too because I was harmful to you and not helpful.  You want to know if I truly connected to you, that I care? Know that I mean it when I am deeply deeply aware that I failed."  After this exchange, Dean Harford showed up at Plaintiff's apartment.

**D. Columbia Had Actual Notice of Harassment Perpetrated by Dean Harford and Was Deliberately Indifferent to His Conduct**

51.     Columbia had actual notice of harassment perpetrated by Dean Harford and was deliberately indifferent to this harassment.

52.     Despite Columbia's actual knowledge of previous bad acts committed by Dean Harford, as well as its actual knowledge of Dean Harford's harassment of Plaintiff, Columbia took no action to prevent Dean Harford from interacting with vulnerable female students.  Indeed, Columbia placed Dean Harford in a position where he had enormous authority over the lives and well-being of GS students.  Upon information and belief, other GS administrators regularly referred female students in need to Dean Harford for assistance.

53.     As the Dean of Students of GS, Dean Harford was one of the highest-ranking officials at GS.  Dean Harford was moreover the primary and most powerful liaison between GS students and GS administration and faculty; from the perspective of GS students, Dean Harford was co-extensive with Columbia University itself.

54.     According to Columbia's Student Policies and Procedures on Discrimination and Harassment, when a University officer learns of an allegation of discrimination or harassment against a student, that officer is expected to notify the student's Dean of Students or the Office of Equal Opportunity and Affirmative Action.  As a result, Dean Harford stood at the apex of the University's procedures for preventing and reporting sexual harassment.

55.     Upon information and belief, Plaintiff's harassment was enabled and encouraged by Columbia's longstanding history of tolerating and condoning willfully sexualized behavior and harassment at the University.

56.     Upon information and belief, Harford had engaged in discriminatory behavior prior to his acts of discrimination against Plaintiff.  Columbia was aware of these earlier incidents, and

nevertheless permitted Dean Harford to remain in his position of power as a student-facing administrator at GS.

57.     Upon information and belief, Dean Harford was accused of harassing a subordinate when he served as Associate Dean of Columbia's School of Professional Studies.  The woman who complained of harassment left her employment with the University.

58.     In addition, in 2013, when Dean Harford was Dean of Students of GS, another complaint was filed against Dean Harford for stalking and harassment of a female co-worker. After the woman reported this harassment to another GS administrator, the administrator initiated a complaint with Columbia's Equal Opportunity and Affirmative Action Office ("EOAA") on the woman's behalf.

59.     Upon information and belief, top administrators at GS, including Vice Dean Curtis Rodgers, had actual knowledge of prior complaints against Dean Harford.

60.     Columbia also had actual knowledge of Dean Harford's harassment of Ms. Politis. Specifically, Ms. Politis disclosed to the Sexual Violence Response Office that Dean Harford had provided her with $500 in cash.  Plaintiff's SVR advocate expressed shock, informed Plaintiff that Dean Harford's behavior was extremely inappropriate, and vowed to raise this issue to her supervisor.

61.     Upon information and belief, Vice Dean Rodgers was aware that Dean Harford provided Ms. Politis with cash.  To Plaintiff's knowledge, Dean Harford was never reprimanded for this behavior, and Columbia did not take steps to protect Plaintiff and other members of the Columbia community.  When Plaintiff asked Dean Harford if the University took any action with regard to this incident, Dean Harford shrugged it off, and told her that he had given money to other students in the past.

62.     In addition, Ms. Politis's advisor at GS asked Dean Harford why he was spending so much time with Plaintiff, and Dean Harford avoided the question.

63.     Vice Dean Rodgers was also aware that Dean Harford was text messaging Ms. Politis, as Dean Harford explicitly told Ms. Politis that the Vice Dean had looked over his shoulder and had seen his text message exchanges with her.  By text message, Dean Harford told Plaintiff, "The vice dean just saw your name while I was texting and said: isn't she a new student?? 😊"

64.     Despite being aware of Ms. Politis and Dean Harford's nearly constant contact, and despite having, upon information and belief, actual knowledge of Dean Harford's harassment of Plaintiff, Columbia and Vice Dean Rodgers failed to take steps to protect Ms. Politis from harassment by Dean Harford.

65.     In addition, Ms. Politis informed her therapist at Columbia's Counseling and Psychological Services that a romantic and sexual relationship had formed with Dean Harford. Plaintiff's therapist discouraged her from telling anyone else about her relationship with Dean Harford, asserting that Ms. Politis had merely experienced a "bad breakup" and warning her that Harford would be "done" if Ms. Politis spoke to others about her situation.  The therapist additionally informed Ms. Politis that she would not take notes about Plaintiff's disclosure of her romantic and sexual relationship with the Dean of Students.

66.     Ms. Politis attempted to contact the Office of the President of Columbia University to report Dean Harford's behavior, but was told that President Bollinger was unavailable.

67.     Columbia knew, or in the exercise of reasonable care should have known, that Dean Harford was not fit for a position in which he would be working with and advising young, female students.   Nonetheless, the University retained Dean Harford and failed to provide adequate supervision.

68.     After further learning of the harassment that Plaintiff suffered, Columbia failed to make an adequate response, amounting to deliberate indifference to discrimination of which the University had actual knowledge.

69.     As a result of Dean Harford and Columbia's actions and inaction, Ms. Politis was and has been effectively denied access to educational benefits and opportunities.  In fact, as a result of Dean Harford and Columbia's action and inaction, Ms. Politis was compelled to withdraw from the University.

**E.  Columbia Retaliates Against Plaintiff**

70.     On August 15, 2018, Ms. Politis filed a complaint against Dean Harford with Columbia's EOAA.

71.     On August 28, 2018, Ms. Politis filed this lawsuit in the United States District Court for the Southern District of New York.

72.     Ms. Politis remained enrolled in Columbia's GS, and intended on taking classes in September 2018.

73.     Upon beginning classes on September 4, 2018, Ms. Politis needed to contact various administrative offices to secure disability accommodations and financial aid assistance, among other services.

74.     When Ms. Politis contacted various school officers and administrators, she was informed that she was only permitted to communicate with the University through a single administrator in the GS Dean of Students Office, and that she could not reach out to or communicate with any other member of the administration.

75.     Columbia's decision to restrict Plaintiff's access to University personnel and resources was in direct retaliation for her lawful and protected complaints and public lawsuit

15

against the University. These restrictions were entirely prompted by a desire to retaliate against Ms. Politis for drawing attention to the discrimination and harassment she endured.

76.     Columbia was aware that restricting Ms. Politis's access to University accommodations and resources would force her to withdraw from the University. Since her acceptance to the University, Ms. Politis had been meeting with and discussing her need for disability accommodations and financial aid with Columbia administrators, and repeatedly and consistently made clear that her requests for these resources were absolutely essential and crucial to her enrollment and success at the University.

77.     As a result of Columbia's restrictions on Ms. Politis's access to the administration, Plaintiff felt required to take a leave of absence during the Fall 2018 semester.

78.     Despite knowing that Ms. Politis's impetus for taking a leave of absence was Dean Harford's harassment, and despite awareness of the severe emotional distress Ms. Politis suffered as a result of this harassment, Columbia nevertheless told Plaintiff that she would be required to vacate her Columbia University housing by January 2019 unless she resumed classes. As a result, Ms. Politis lost her Columbia University housing in January 2019.

79.     This threat to Ms. Politis's housing security was in direct retaliation for her lawful and protected complaints and public lawsuit against the University. Columbia sought to retaliate against Ms. Politis for drawing attention to the discrimination and harassment she endured.

80.     As a result of Columbia's retaliatory acts, Ms. Politis has been deprived of access to educational opportunities and benefits provided by Columbia. Indeed, Ms. Politis was compelled to withdraw from the University entirely as a result of this retaliation.

### F.  Plaintiff Suffers Physical, Emotional, Reputational and Financial Harms

81.     Defendants' actions altered and worsened the condition of Ms. Politis's environment at Columbia.  Defendants' conduct was so severe, pervasive, and/or objectively offensive that it deprived Ms. Politis of access to educational opportunities or benefits provided by Defendants.

82.     In particular, Defendants' actions caused trauma and stress that made it physically impossible for Plaintiff to attend class, or even step onto campus, without experiencing flashbacks and disturbing thoughts.  Because of Defendants' actions, Ms. Politis was denied full and equal access to the primary service and public accommodation provided by Columbia University, *i.e.*, an education.

83.     As a result of the actions of Dean Harford and Columbia, Ms. Politis suffers and has suffered from physical and psychological injuries, including:

    i.      Insomnia and generalized anxiety;

    ii.      Stress-induced hives;

    iii.      Weight and hair loss;

    iv.      Stress-related wrist pain and muscle tension;

    v.      Post-traumatic stress disorder;

    vi.      Disturbing flashbacks of Dean Harford's harassment;

    vii.      Sense of betrayal;

    viii.      Strong and debilitating sense of guilt and shame;

    ix.      Extreme difficulty concentrating;

    x.      Dissociation after encountering reminders of sexual harassment;

    xi.      Sexually disturbing and violent nightmares and memories; and

xii.      Feelings of despair and hopelessness.

84.      Plaintiff's emotional distress and mental anguish was so severe that she was not able to pursue her education at Columbia.

85.      As a result of Defendants' unlawful conduct, Plaintiff has also suffered substantial harm to her academic career, resulting in damage to her future educational and career prospects. Plaintiff has also suffered significant financial losses and will incur further financial losses in the future.

## V.      COUNTS

### COUNT I

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—
GENDER DISCRIMINATION IN TERMS, CONDITIONS, AND PRIVILEGES
New York City Administrative Code § 8-107
(Against All Defendants)**

86.      Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

87.      During all times relevant to this claim, Plaintiff was a female student at Columbia University.

88.      During all times relevant to this claim, Defendant Harford was an employee and agent of Defendant Columbia.  During all times relevant to this claim, Defendant Harford functioned in a supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's educational environment.

89.      Defendant Harford participated in the conduct giving rise to this claim.  Defendant Harford aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

90.      Defendants have subjected Plaintiff to discrimination in the terms, conditions, or privileges of public accommodation in violation of the New York City Human Rights Law.

Defendants have treated Plaintiff differently from and less preferably than similarly-situated male students.

91.     Plaintiff's sex has been a determining factor in Defendants' subjecting of Plaintiff to discrimination in the terms, conditions, or privileges of public accommodation.

92.     By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

93.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future educational opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

94.     As a result of Defendants' unlawful conduct, Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT II

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—**
***QUID PRO QUO* SEXUAL HARASSMENT**
**New York City Administrative Code § 8-107**
**(Against All Defendants)**

95.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

96.     During all times relevant to this claim, Plaintiff was a female student at Columbia University.

97.     During all times relevant to this claim, Defendant Harford was an employee and agent of Defendant Columbia.  During all times relevant to this claim, Defendant Harford

functioned in a supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's educational environment.

98.     Defendant Harford participated in the conduct giving rise to this claim.  Defendant Harford aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

99.     Defendant Harford subjected Plaintiff to unwelcome *quid pro quo* sexual harassment based on her sex.  Defendant Harford subjected Plaintiff to unwelcome sexual conduct, including sexual comments, sexual advances, and coerced sexual conduct.

100.    Plaintiff's reaction to that conduct was used as the basis for decisions affecting the terms, conditions, or privileges of her status as a student at Columbia.  Among other things, Plaintiff was manipulated into believing that continuing her relationship with Defendant Harford would guarantee her receipt of scholarship money, housing, psychological services, and disability accommodations from the University.

101.    A reasonable person would consider that she was being treated less well than other students under all the circumstances.  Plaintiff actually considered that she was being treated less well than other students because she is female.

102.    A reasonable person would have considered the conduct to be significant and not trivial or petty.  Plaintiff actually considered the conduct to be significant and not trivial or petty.

103.    Defendants created, enabled, and maintained a sexually hostile educational environment.

104.    Defendant Columbia knew of the history of inappropriate conduct perpetrated by Defendant Harford and accepted it and/or failed to take immediate and appropriate corrective action.

105.    Moreover, in the exercise of reasonable care, Defendant Columbia should have known of the conduct perpetrated by Defendant Harford and failed to exercise reasonable diligence to prevent such conduct.

106.    Defendant Columbia lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees and agents, and for taking appropriate action against those persons who are found to have engaged in such practices.

107.    Defendant Columbia fails to effectively communicate a firm policy against such practices to its employees and agents.

108.    Defendant Columbia lacks a program to educate employees and agents about unlawful discriminatory practices under local, state, and federal laws.

109.    Defendant Columbia lacks procedures for the supervision of employees and agents specifically directed at the prevention and detection of such practices.

110.    By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

111.    As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

112.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT III

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—
HOSTILE EDUCATIONAL ENVIRONMENT
New York City Administrative Code § 8-107
(Against All Defendants)**

113.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

114.    During all times relevant to this claim, Plaintiff was a female student at Columbia University.

115.    During all times relevant to this claim, Defendant Harford was an employee and agent of Defendant Columbia.   During all times relevant to this claim, Defendant Harford functioned in a supervisory capacity towards Plaintiff and had the power to alter the terms and conditions of Plaintiff's educational environment.

116.    Defendant Harford participated in the conduct giving rise to this claim.   Defendant Harford aided, abetted, incited, compelled, or coerced the unlawful acts alleged herein.

117.    Defendant Harford subjected Plaintiff to a hostile educational environment based on her sex.   The hostile environment included sexual comments, sexual advances, and coerced sexual conduct.   All of this conduct was unwanted and grossly inappropriate in light of Defendant Harford's position of power.

118.    A reasonable person would consider that she was being treated less well than other students under all the circumstances.   Plaintiff actually considered that she was being treated less well than other students because she is female.

119.    A reasonable person would have considered the conduct to be significant and not trivial or petty.   Plaintiff actually considered the conduct to be significant and not trivial or petty.

120.     Defendants created, enabled, and maintained a sexually hostile educational environment.

121.     Defendant Columbia knew of the conduct perpetrated by Defendant Harford and accepted it and/or failed to take immediate and appropriate corrective action.

122.     Moreover, in the exercise of reasonable care, Defendant Columbia should have known of the conduct of Defendant Harford and failed to exercise reasonable diligence to prevent such conduct.

123.     Defendant Columbia lacks a meaningful and responsive procedure for investigating complaints of discriminatory practices by employees and agents, and for taking appropriate action against those persons who are found to have engaged in such practices.

124.     Defendant Columbia fails to effectively communicate a firm policy against such practices to employees and agents.

125.     Defendant Columbia lacks a program to educate employees and agents about unlawful discriminatory practices under local, state, and federal laws.

126.     Defendant Columbia lacks procedures for the supervision of employees and agents specifically directed at the prevention and detection of such practices.

127.     By reason of the continuous nature of Defendants' discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

128.     As a result of Defendants' unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

129.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

<u>COUNT IV</u>

**VIOLATION OF NEW YORK CITY HUMAN RIGHTS LAW—
RETALIATION
New York City Administrative Code § 8-107
(Against Defendant Columbia)**

130.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

131.    During all times relevant to this claim, Plaintiff was a female student at Columbia University.

132.    Defendant Columbia has subjected Plaintiff to retaliation in violation of the New York City Human Rights Law.

133.    Plaintiff filed a complaint with Columbia's EOAA on August 15, 2018.

134.    Plaintiff filed the original complaint in this case on August 28, 2018.

135.    Columbia knew that Plaintiff had engaged in these protected activities and subsequently undertook actions disadvantageous to her, including denying reasonable accommodations, and restricting Plaintiff's access to Columbia offices, administrators, and resources.  Columbia's actions materially harmed Plaintiff's ability to receive an education.

136.    But for Plaintiff's EOAA complaint and the complaint in this case, Columbia would not have subjected Plaintiff to such differential and retaliatory treatment.  A retaliatory animus substantially motivated Columbia to take these adverse actions.

137.    Defendant Columbia's treatment of Plaintiff would dissuade a reasonable student from making or supporting a charge of discrimination against Columbia.

24

138.    By reason of the continuous nature of Defendant Columbia's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

139.    As a result of Defendant Columbia's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

140.    Plaintiff is entitled to all remedies available for violations of the New York City Human Rights Law, including compensatory damages, punitive damages, attorneys' fees, costs, and other appropriate relief.

## COUNT V

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972, AS AMENDED —**
**GENDER DISCRIMINATION IN TERMS AND CONDITIONS OF EDUCATION**
**20 U.S.C. § 1681 *et seq.***
**(Against Defendant Columbia)**

141.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

142.    Upon information and belief, at all times relevant to this action, Defendant Columbia has received, and continues to receive, federal financial assistance.

143.    Defendant Columbia has discriminated against Plaintiff by subjecting her to different treatment on the basis of her gender.

144.    Defendant Columbia has discriminated against Plaintiff by treating her differently from and less preferably than similarly-situated male students and by subjecting her to disparate terms and conditions of education in violation of Title IX.

145. Defendant Columbia has discriminated against Plaintiff by creating and maintaining a hostile educational environment that was so severe, pervasive, and/or objectively offensive that it deprived her of access to educational opportunities or benefits provided by Defendant.

146. Defendant Columbia's differential treatment of Plaintiff is a direct and proximate result of gender discrimination.

147. Defendant Columbia has failed to prevent, respond to, adequately investigate, and/or appropriately resolve instances of gender discrimination.

148. A cognizable basis for liability against Columbia exists, as this educational institution receives federal funds, had actual notice of the conduct of Defendant Harford, and was deliberately indifferent to this harassment, both before and after the harassment of Plaintiff occurred.

149. By reason of the continuous nature of Defendant Columbia's discriminatory conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

150. As a result of Defendant Columbia's unlawful discrimination, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

151. Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs, and other appropriate relief.

## COUNT VI

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,
AS AMENDED —
*QUID PRO QUO* SEXUAL HARASSMENT
20 U.S.C. § 1681 *et seq.*
(Against Defendant Columbia)**

152.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

153.    Upon information and belief, at all times relevant to this action, Columbia has received, and continues to receive, federal financial assistance.

154.    Defendant Columbia has discriminated against Plaintiff by creating and maintaining a hostile educational environment that was so severe, pervasive, and/or objectively offensive that it deprived her of access to educational opportunities or benefits provided by Defendant.

155.    Plaintiff was subject to unwelcome *quid pro quo* sexual harassment based on her sex.  She was subject to unwelcome sexual conduct, including sexual comments and unwanted sexual advances.

156.    A cognizable basis for liability against Columbia exists, as this educational institution receives federal funds, had actual notice of the conduct of Defendant Harford, and was deliberately indifferent to this harassment, both before and after the harassment of Plaintiff occurred.

157.    Such deliberate indifference places Plaintiff and other students at risk of sexual harassment.

158.     By reason of the continuous nature of Defendant Columbia's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

159.     As a result of Defendant Columbia's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to lost future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

160.     Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs, and other appropriate relief.

**COUNT VII**

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,
AS AMENDED —
HOSTILE EDUCATIONAL ENVIRONMENT
20 U.S.C. § 1681 *et seq.*
(Against Defendant Columbia)**

161.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

162.     Upon information and belief, at all times relevant to this action, Columbia has received, and continues to receive, federal financial assistance.

163.     Defendant Columbia has discriminated against Plaintiff by exposing her to a sexually hostile environment that was sufficiently severe, pervasive, and/or objectively offensive to interfere with Plaintiff's educational opportunities, undermining and detracting from her school experience.  Because of Columbia's failure to implement adequate procedures to detect, monitor, and correct this discrimination and hostile environment, Columbia has denied Plaintiff her personal right to learn in an environment free of sexual harassment.

164.    Columbia was on actual notice of the sexual harassment committed by Dean Harford and the hostile academic environment that Plaintiff endured at Columbia during the relevant timeframe.  Columbia has demonstrated deliberate indifference by tolerating, condoning, ratifying, and/or engaging in the hostile educational environment and failing to take remedial action.

165.    A cognizable basis for liability against Columbia exists, as this educational institution receives federal funds, had actual notice of the conduct of Defendant Harford, and was deliberately indifferent to this harassment, both before and after the harassment of Plaintiff occurred.

166.    By reason of the continuous nature of Defendant Columbia's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

167.    As a result of Defendant Columbia's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to loss of future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

168.    Plaintiff is entitled to all legal and equitable remedies available for violations of Title IX, including compensatory damages, attorneys' fees and costs, and other appropriate relief.

## COUNT VIII

**VIOLATION OF TITLE IX OF THE EDUCATION AMENDMENTS OF 1972,
AS AMENDED —
RETALIATION
20 U.S.C. § 1681 *et seq.*
(Against Defendant Columbia)**

169.    Plaintiff re-alleges and incorporates by reference each and every allegation in this

Complaint as though fully set forth herein.

170.    Upon information and belief, at all times relevant to this action, Columbia has received, and continues to receive, federal financial assistance.

171.    Defendant Columbia has subjected Plaintiff to retaliation in violation of Title IX.

172.    Plaintiff filed a complaint with Columbia's EOAA on August 15, 2018.

173.    Plaintiff filed the original complaint in this case on August 28, 2018.

174.    Columbia knew that Plaintiff had engaged in these protected activities and subsequently undertook actions disadvantageous to her, including denying reasonable accommodations, and restricting Plaintiff's access to Columbia offices, administrators, and resources.  Columbia's actions materially harmed Plaintiff's ability to receive an education.

175.    But for Plaintiff's EOAA complaint and the complaint in this case, Columbia would not have subjected Plaintiff to such differential and retaliatory treatment.  A retaliatory animus substantially motivated Columbia to take these adverse actions.

176.    Defendant Columbia's treatment of Plaintiff would dissuade a reasonable student from making or supporting a charge of discrimination against Columbia.

177.    By reason of the continuous nature of Defendant Columbia's unlawful conduct, Plaintiff is entitled to the application of the continuing violation doctrine to the unlawful acts alleged herein.

178.    As a result of Defendant Columbia's unlawful conduct, Plaintiff has suffered and will continue to suffer harm, including but not limited to loss of future educational and employment opportunities, humiliation, embarrassment, reputational harm, emotional and physical distress, mental anguish, and other economic damages and non-economic damages.

179.    Plaintiff is entitled to all legal and equitable remedies available for violations of

Title IX, including compensatory damages, attorneys' fees and costs, and other appropriate relief.

## COUNT IX

### NEGLIGENT SUPERVISION AND RETENTION
### (Against Defendant Columbia)

180.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

181.    Columbia owed a duty of care to protect Plaintiff from sexual harassment, which was unwarranted, unwanted, and improper.

182.    Columbia breached its duty in its training, supervision, and retention of Defendant Harford, an employee that Columbia knew, or in the exercise of reasonable care should have known, was unfit to work with and supervise young, female students.

183.    As a direct and proximate result of Columbia's breach of its duty, Plaintiff was subjected to sexual harassment by Defendant Harford.

184.    Plaintiff suffered damages and injuries for which Columbia is liable under state law.

## COUNT X

### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendant Thomas Harford)

185.    Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

186.    Defendant Harford owed Plaintiff a duty of care, which he breached through sexually harassing her.

187.    As a direct and proximate result of Defendant Harford's breach of his duty, Plaintiff was subjected to sexual harassment by Defendant Harford.

188.     Plaintiff suffered damages and injuries for which Defendant Harford is liable under state law.

## COUNT XI

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
**(Against Defendant Thomas Harford)**

189.     Plaintiff re-alleges and incorporates by reference each and every allegation in this Complaint as though fully set forth herein.

190.     Defendant Harford's sexual harassment of Plaintiff constituted extreme and outrageous conduct.

191.     Through his conduct, Defendant Harford intended to cause, or disregarded the substantial probability that he would cause, severe emotional distress to Plaintiff.

192.     As a direct and proximate result of Defendant Harford's conduct, Plaintiff suffered damages and injuries for which Defendant Harford is liable under state law.

## PRAYER FOR RELIEF ON CLAIMS

WHEREFORE, Plaintiff prays that this Court:

A.     Award Plaintiff all of her damages under the New York City Human Rights Law, Title IX of the Education Amendments of 1972, and common law, including compensatory damages and punitive damages, in an amount not less than $60 million;

B.     Award Plaintiff all attorneys' fees, costs, and expenses available under law;

C.     Award Plaintiff all pre-judgment interest and post-judgment interest available under law; and

D.     Award Plaintiff such additional and further relief as this Court may deem just and proper.

## VI.    <u>JURY DEMAND</u>

Plaintiff demands a trial by jury on all issues triable of right by jury.


Dated:  March 27, 2019                                    Respectfully submitted,


David Sanford (admitted *pro hac vice*)
Jeremy Heisler (JH-0145)
Alexandra Harwin (AH-3111)
Andrew Melzer (AM-7649)
Meredith Firetog (MF-8973)
**SANFORD HEISLER SHARP, LLP**
1350 Avenue of the Americas, 31st Floor
New York, New York 10019
Telephone: (646) 402-5650
Facsimile: (646) 402-5651
dsanford@sanfordheisler.com
jheisler@sanfordheisler.com
aharwin@sanfordheisler.com
amelzer@sanfordheisler.com
mfiretog@sanfordheisler.com

*Attorneys for Plaintiff Irene Politis*